**In re Kenneth Ray SMOOT, Debtor.**

**Lynn Lewis Tavenner, Chapter 7 Trustee, Plaintiff,**

**v.**

**Kenneth Ray Smoot, Katina Smoot, Cory R. Smoot, Gina Smoot, Glass Apple, Inc., and Home Check Services, a division of Glass Apple, Inc., Defendants.**

**Bankruptcy No. 98–39531–T.
Adversary No. 99–3006–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Sept. 30, 1999.

Dion W. Hayes, McGuire, Woods, Battle & Boothe, Richmond, VA, for Trustee.

Brett Alexander Zwerdling, Zwerdling & Oppleman, Richmond, VA, for Debtor.

Douglas M. Atkins, Bourdow & Bowen, Midlothian, VA, for Glass Apple.

Donald F. Lynch, III, LeClair Ryan, Richmond, VA, for Defendants Katina Smoot, Cory R. Smoot, and Gina Smoot.

Matthew P. Geary, Goodwin, Sutton, Duval & Geary, Mark Gregory, Harfield, Morton & Allen, Richmond, VA, Co-counsel for Katina Smoot.

### MEMORANDUM OPINION (AMENDED)

DOUGLAS O. TICE, Jr., Chief Judge.

This matter comes before the court on the complaint of the trustee seeking (1) to recover prepetition transfers from Kenneth Smoot, debtor, to Glass Apple, Inc. (pursuant to 11 U.S.C. §§ 544(b), 548(a), and 550, and Va.Code §§ 55–80 and 55–81); (2) to deny the debtor's discharge

under 11 U.S.C. § 727(a)(2); and (3) to assert under Virginia law an alter ego/reverse veil piercing claim against Glass Apple. For the reasons stated in this opinion, the court finds that the trustee is entitled to recover the transferred funds, and the court will sustain the trustee's objection to the claimed exemption in the recovered funds. Additionally, debtor's discharge will be denied pursuant to 11 U.S.C. § 727. The court finds it unnecessary to rule on the alter ego/reverse veil piercing count of the complaint.

### Findings of Fact

Kenneth Smoot was hired by CSX Transportation, Inc., (CSXT) on June 10, 1978. As a condition of his employment, he was a dues paying member of the United Transportation Union (UTU). To supplement his income during periods of unemployment or lay-offs from CSXT, in the early 1980's, debtor established an unincorporated entity known as Glass Apple under which he performed various handiwork and odd jobs around people's homes.

In April 1995, debtor transferred his employment with CSXT from Virginia to Ohio. In June 1996, debtor, while in the employ of CSXT as a locomotive engineer, suffered an injury when the flooring of a locomotive engine gave way causing damage to the defendant's knees and body. The debtor had knee surgery in 1996, and returned to work as a locomotive engineer with CSXT for parts of 1996 and 1997. In 1997, debtor left the employ of CSXT, sold his home in Ohio and returned to Virginia.

In January 1998, Glass Apple, Inc., was incorporated under the laws of the Commonwealth of Virginia. Kenneth Smoot, the debtor, is Glass Apple's registered agent and president. Katina Smoot, debtor's wife, is the vice-president and is a 50% shareholder. Cory Smoot, debtor's adult son, is the secretary, treasurer, and a 25% shareholder. Gina Smoot, debtor's adult daughter, owns the remaining 25% of the corporation. The directors of Glass Apple are Kenneth and Katina Smoot.

Debtor incorporated Glass Apple with the hope of establishing a family business and a potential source of income for the Smoot family. Debtor was advised by medical professionals that he would need a knee replacement in approximately 15 years, and he wanted to set the company up so that his family would have a viable business when he could no longer perform manual labor. He expected his mobility to deteriorate and planned to concentrate more on managing the business after he had taught his son home repair skills. Glass Apple, through various "divisions," engaged in operations as diverse as home repair and maintenance, inspections, lawn care, music production, and off-shore investments. Home Check Services is a division of Glass Apple which handles company finances.

On March 30, 1998, the United States District Court for the Northern District of Ohio entered an order finding Kenneth Smoot liable to CSXT and UTU for violations of the Federal Wiretapping Act; however, the court took the amount of damages and attorneys' fees to be awarded under advisement. The liability was based on the debtor's illegal tape-recording of an Executive Session of Public Law Board No. 3882, which had been convened to consider debtor's claims under a labor agreement entered into between CSXT and the UTU.

On June 5, 1998, while the amount of damages to be awarded against debtor in the wiretapping case was under advisement in the Ohio district court, debtor and CSXT entered into a $250,000.00 settlement and release of personal injury claims that debtor might have against CSXT un-

der FELA.[1] After deducting amounts for advances and other outstanding indebtedness of debtor, a net amount of $217,059.25 was deposited into a bank account held by Kenneth and Katina Smoot as joint tenants with rights of survivorship at the CanDo Credit Union in Ohio. On the same date, debtor wire transferred $210,000.00 from the joint account at the CanDo Credit Union to Glass Apple's Home Check Services' account at the People's Bank of Virginia (currently, F & M Bank).

The Ohio district court entered judgment on August 7, 1998, against Kenneth Smoot and in favor of CSXT for $170,000.00 and a judgment against Kenneth Smoot and in favor of UTU for $180,000.00. On September 24, 1998, the Ohio district court entered a second judgment against Kenneth Smoot in favor of CSXT in the amount of $25, 847.31 representing the attorney fees and costs incurred by CSXT in litigating its Federal Wiretapping claim against the debtor.

On December 11, 1998, the UTU filed a suit in the Circuit Court for the County of Chesterfield, Virginia, against the debtor, Katina Smoot, Cory Smoot, Gina Smoot, Glass Apple, and Home Check Services, seeking to set aside transfers as fraudulent or voluntary transfers pursuant to sections 55–80 and 55–81 of the Virginia Code and to have these assets made available for satisfaction of the August 7, 1998, judgment. The UTU also filed an *ex parte* petition for attachment. On December 14, 1998, after the UTU posted the necessary bond, the circuit court issued a writ of attachment ordering the Sheriff of Chesterfield County to attach by levy specified property. On or about December 21, 1998, CSXT filed a petition to intervene as co-plaintiff.

Before a hearing on the circuit court's writ of attachment could be held, debtor filed this chapter 7 bankruptcy petition on December 23, 1998. The debtor's schedules, as amended, indicate that on the petition date, he had assets worth $469,083.00 and liabilities totaling $490,907.31 (including the judgments in favor of CSXT and UTU totaling $445,847.31). The schedules, as amended, assert an exemption in the amount of $217,000.00 for "[f]unds received pursuant to workmen's compensation suit (FELA injury settlement)" under Va.Code § 34–28 and an exemption in the amount of $233,333.00 for anticipated proceeds from a legal malpractice suit.

Plaintiff Lynn Tavenner was appointed interim chapter 7 trustee of debtor's chapter 7 case and now serves as trustee. On January 19, 1999, the trustee filed this adversary proceeding to avoid and recover fraudulent transfers [2] and object to debt-

---

1. Recoveries for injuries and death sustained by employees of a railroad is set forth in 45 U.S.C. §§ 51 to 60, commonly referred to as the Federal Employers Liability Act (FELA).

2. Subsequent to debtor's transfer of the $210,000.00 from CanDo Credit Union to Glass Apple's Home Check Services' account, debtor caused the following transfers to be made with checks drawn on Home Check Services account:

| Date | Amount | Purpose |
| --- | --- | --- |
| 6/09/98 | $ 28,962.11 | 1998 Jeep Grand Cherokee titled in the name of Katina Smoot |
| 6/11/98 | 8,000.00 | payment on 1998 Eagle Talon titled in the name of Gina Smoot |
| 6/12/98 | 100,000.00 | payable to First Union Bank and deposited in an account in the name of Glass Apple |
| 6/16/98 | 10,000.00 | payable to Cory Smoot |
| 7/06/98 | 40,000.00 | payable to First Union Bank and deposited in an account in the name of Glass Apple |
| 7/07/98 | 1,025.00 | payable to Kenneth Smoot |

or's discharge. On February 3, 1999, this court entered an order pursuant to Bankruptcy Code § 105(a) granting the trustee's motion for preliminary injunction against specified property of the defendants.

### Discussion and Conclusions of Law

Plaintiff trustee in bankruptcy seeks to set aside transfers of funds by debtor for the benefit of the creditors of the bankruptcy estate. As a basis of recovery, the trustee alleges that pursuant to Bankruptcy Code § 544(b) these transfers are avoidable under Virginia Code §§ 55–80 and 55–81. The trustee also alleges that transfers are avoidable pursuant to Bankruptcy Code §§ 548(a)(1) and 548(a)(2). Thus, the trustee asserts four separate grounds by which to avoid the transfers: (1) that the transfers were fraudulent under state law; (2) that the transfers were voluntary conveyances avoidable under state law; (3) that the transfers were made with actual intent to hinder, delay, or defraud creditors; and (4) that debtor received less than reasonably equivalent value in exchange for transfers made while insolvent. In addition, the trustee objects to debtor's discharge pursuant to Bankruptcy Code § 727(a)(2)(A). Finally, trustee asserts an alter ego/reverse veil piercing claim against Glass Apple, seeking under this additional theory to hold the corporation liable for debtor's debts.

### I.

The court begins the analysis by noting that there is no dispute that had the proceeds received by debtor in the injury settlement been left in debtor's account and not been transferred to Glass Apple, the proceeds would have been exempt in this bankruptcy case. Under Bankruptcy Code § 541, the filing of a bankruptcy petition creates an estate composed of all legal and equitable interests of debtor in property. This includes all exempt property. *See Shirkey v. Leake*, 715 F.2d 859, 863 (4th Cir.1983). After the property comes into the estate, § 522(b) provides that notwithstanding § 541, an individual debtor may exempt certain property from the estate. Pursuant to § 522(b)(1), Virginia elected to opt-out of the federal exemptions contained in § 522(d). *See* Va.Code § 34–3.1.[3] Accordingly, residents of Virginia filing bankruptcy petitions may claim only those exemptions allowable under state law and general federal law. *See In re Massey*, 225 B.R. 887, 890 (Bankr. E.D.Va.1998). The state law exemptions available to Virginia residents are primarily set forth in Title 34, Virginia Code Ann. Among these is Virginia Code § 34–28.1, which creates a statutory exemption for all personal injury actions and any resulting recovery. *See* Va.Code § 34–28.1;[4] *King*

| | | |
|---|---|---|
| 7/13/98 | 1,500.00 | payable to Kenneth Smoot |
| 7/20/98 | 1,500.00 | payable to Kenneth Smoot |
| 10/21/98 | 2,829.62 | 1998 Yamaha Virga motorcycle titled in the name of Cory Smoot |
| 10/22/98 | 1,500.00 | payable to Cory Smoot |
| 10/26/98 | 1,200.00 | payable to Kenneth Smoot |

**3.** Section 34–3.1: No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of § 522 of the Bankruptcy Reform Act (Public Law 95–598), except as may otherwise be expressly permitted under this title.

**4.** Section 34–28.1. Except for liens created under ... Title 8.01 and ... Title 54.1, all causes of action for personal injury or wrongful death and the proceeds derived from ... settlement shall be exempt from creditor process against the injured person .... The provisions of this section shall not be construed

*v. Webb (In re Webb)*, 214 B.R. 553, 556 (E.D.Va.1997).

### A. Avoidance under State Law

 The trustee seeks to avoid debtor's transfer of $210,000.00 to Glass Apple on June 5, 1998, as a fraudulent transfer and a voluntary conveyance under state law. Bankruptcy Code § 544(b) vests in the trustee the power to avoid prepetition transfers by a debtor of property which would be voidable under state law. Section 544, which (along with § 548) governs the trustee's powers to avoid fraudulent conveyances, provides in part:

> (b)(1) ... [t]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title ....

Specifically, in Count II the trustee seeks to avoid and recover allegedly fraudulent transfers pursuant to Bankruptcy Code §§ 544(b) and 550(a), and Virginia Code § 55–80.[5] Virginia Code § 55–80 provides that any gift, conveyance, assignment, or transfer of any property with

intent to hinder, delay or defraud creditors is void as to the creditors. *See Wick v. Yost (In re Yost)*, 47 B.R. 697, 699 (Bankr. W.D.Va.1985). In addition, in Count IV the trustee also seeks avoidance and recovery of the transfer as a voluntary conveyance pursuant to Bankruptcy Code §§ 544(b) and 550(a), and Virginia Code § 55–81.[6]

After considering the relevant statutes, case law, and underlying history, I do not believe that the state courts in Virginia would hold that the transfer by debtor of property that is potentially exempt under Virginia Code § 34–28.1 to Glass Apple, a corporation closely-held by related parties, is in fraud of the rights of debtor's creditors. In *Oliver v. Givens*, 204 Va. 123, 129 S.E.2d 661 (1963), the then Supreme Court of Appeals of Virginia, now the Virginia Supreme Court, held that the gift by the husband to his wife of his interest in real property, held by them as tenants by the entireties, was not in fraud of the rights of the husband's creditors. They stated that "[t]his is so for the obvious reason that creditors are not prejudiced by a gift of property which is exempt from their

---

to affect any voluntary assignment of the proceeds or anticipated proceeds of a personal injury ... settlement as permitted by Section 8.01–26.

**5.** Section 55–80: Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear[s] that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

**6.** Section 55–81: Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made. Even though it is decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

**136**

claims." *See id.* at 664. The reasoning of the highest state court is similar to the "no harm, no foul" principle enunciated in the preference context of § 547 in *In re Treiber*, 92 B.R. 930, 932 (Bankr.N.D.Okla. 1988). Under this approach, a transfer of property that could have been exempted cannot constitute a fraudulent transfer since the property would be immune from the claims of creditors if it were not conveyed. Therefore, the court holds that property that is potentially exempt property under Virginia Code § 34–28.1 cannot be recovered by the trustee pursuant to Bankruptcy Code §§ 544(b) and 550(a), and Virginia Code §§ 55–80 and 55–81.

**B. Avoidance under Federal Law**

■ In addition to the bases existing under state law for the trustee to attempt to avoid the transfer of the funds, the trustee also relies upon Bankruptcy Code § 548, which sets forth the powers of a trustee in bankruptcy to avoid fraudulent transfers. The section provides for the setting aside not only of transfers infected by actual fraud but some other transfers as well—so-called constructively fraudulent transfers. *See BFP v. Resolution Trust Co.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). Section 548 provides in part:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the

date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
. . . .

There are divergent views among courts regarding whether transfers of potentially exempt property can be avoided by trustees pursuant to § 548. *See Kapila v. Fornabaio (In re Fornabaio)*, 187 B.R. 780, 782 (Bankr.S.D.Fla.1995). The debtor and Glass Apple rely on the "no harm, no foul" principle enunciated in *In re Treiber*, 92 B.R. at 932. As previously mentioned, under this approach a transfer of property that could have been exempted cannot constitute a fraudulent transfer since the property would be immune from the claims of creditors if it were not conveyed. However, a majority of courts that have considered the issue have noted that the "no harm, no foul" approach seemed more appropriate under the old Bankruptcy Act in which exempt property was not part of the bankruptcy estate.[7] *See, e.g., In re Wickstrom*, 113 B.R. 339, 350 (Bankr.W.D.Mich. 1990). In contrast, under the 1978 Bankruptcy Code, all property, including potentially exempt property, is part of the estate until the debtor claims an exemption. *See* 11 U.S.C. § 541(a). A debtor is entitled to claim an exemption after a transfer has been avoided only if specified criteria have been met. *See* discussion *infra* part II. Consequently, a transfer of potentially exempt property could harm creditors.

7. The Fourth Circuit in a recent unpublished opinion declined to follow *In re Treiber* because of the difference between the old and the new bankruptcy law. *See Satterfield v.*

*Sigmon (In re Mahaffey)*, 91 F.3d 131, 1996 WL 383922 (4th Cir.(W.D.N.C.) July 10, 1996) (unpublished opinion).

Moreover, the plain language of § 522(g) appears to expressly contemplate this result by enabling debtor to claim an exemption on property recovered by the trustee if debtor could have exempted the property had it not been transferred. *See* 11 U.S.C. § 522(g). Accordingly, this court holds that it is possible for a fraudulent transfer of potentially exempt property, whether infected by actual fraud or constructive fraud, to be subject to avoidance pursuant to § 548.

■ In Count I of her complaint, the trustee seeks avoidance and recovery of allegedly actual fraudulent transfers pursuant to §§ 548(a)(1) and 550(a). Pursuant to § 548(a)(1), the trustee may avoid a transfer of property that debtor transferred with actual intent to hinder, delay, or defraud creditors. *See, e.g., Hyman v. Porter (In re Porter)*, 37 B.R. 56, 60, 61 (Bankr.E.D.Va.1984) (holding debtor's transfer of real property from himself to his wife and himself as tenants by the entirety is a fraudulent transfer avoidable under § 548(a)(1)). Where a transfer is between related parties, the transfer is subject to close scrutiny and gives rise to a presumption of actual fraudulent intent if the transfer is without adequate consideration. *See id.* at 60–61. This presumption establishes the trustee's *prima facie* case and shifts the burden of proof to establish the absence of fraudulent intent to the debtor. *See id.*, at 61. Here, neither debtor nor the other defendants has offered sufficient testimony to defeat the presumption of actual fraudulent intent. Therefore, this court holds the cash transfer of $210,000.00 from debtor to Glass Apple is avoidable pursuant to § 548(a)(1).

■ The second basis under federal law upon which the trustee seeks to avoid the transfer of funds to Glass Apple is that debtor was insolvent at the time of the transfer and received less than reasonably

equivalent value in exchange. Specifically, in Count III, the trustee seeks avoidance and recovery of constructive fraudulent transfers pursuant to §§ 548(a)(2) and 550(a). The constructive fraud provision under of § 548(a)(2)(A) permits avoidance if the trustee can establish (1) that debtor had an interest in property; (2) that a transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) that debtor received "less than a reasonably equivalent value in exchange for such transfer;" and (4) that debtor was insolvent at the time of the transfer or became insolvent as a result thereof. *See* 11 U.S.C. § 548(a)(2)(A); *BFP v. Resolution Trust Co.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

■ The debtor's stated intention in transferring the $210,000.00 to Glass Apple as a "capital infusion" was to establish a family business that could provide for him and his family, but he did not receive anything of value. He did not own any stock in the company at the time of the transfer, nor did he receive any as a result of the transfer. No promissory note nor any other written agreement was entered into between the corporation and debtor. Courts have held consistently that love and affection does not constitute value for purposes of § 548. *See, e.g., In re Treadwell*, 699 F.2d 1050, 1051 (11th Cir.1983); *In re Dante*, 1 B.R. 547, 549 (Bankr.N.D.Ga. 1979). The court finds that debtor did not receive a reasonably equivalent value in exchange for the transfer. Therefore, if this court finds that debtor was insolvent at the time of the transfer, the transfer may be avoided by the trustee pursuant to § 548(a)(2).

Courts have often relied upon the Bankruptcy Code definition of insolvency for purposes of the § 548(a)(2) analysis. *See, e.g., In re Porter*, 37 B.R. at 61; *In re*

*Coleman*, 21 B.R. 832, 834 (Bankr.S.D.Tex. 1982). Specifically § 101(32) provides:

"insolvent" means—

(A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title; . . . .

"Debt" means a "liability on a claim." 11 U.S.C. § 101(12). A claim under the Code is defined in § 101(5), which provides:

"claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; . . . .

When the definitions of § 101 are applied to the insolvency provisions of § 548, the inescapable conclusion is that all liabilities contingent or otherwise must be considered in determining whether a debtor was insolvent at the time of the transfer in question. *See In re Porter,* 37 B.R. at 61.

The debtor's schedules, as filed December 31, 1998, listed liabilities totaling $490,907.31. The debtor testified that his financial condition immediately following the wire transfer on June 5, 1999, was substantially the same as when he filed bankruptcy on December 23, 1999, with the exception of the unliquidated claim from CSXT and UTU. At the time debtor transferred the funds to Glass Apple, liability for violations of the Federal Wiretapping Act had been established in the Ohio district court, but the amount of damages to be awarded had yet to be determined. Accepting, for purposes of argument, debtor's contention that the unliquidated damages could reasonably be expected to have been valued at zero, the amount of debtor's total liabilities needs to be reduced by the $445,847.31 listed in debtor's schedules for these claims, bringing the total adjusted liabilities on the date of the wire transfer to $45,060.00. The debtor's schedules, as amended September 2, 1999, listed assets totaling $469,083.00. For purposes of a solvency determination, a total of $448,083.00 (consisting of the $210,000.00 property transferred plus $233,333.00 for anticipated proceeds from a personal injury lawsuit and $4,750.00 in miscellaneous assets that debtor has claimed as exempt) must be subtracted from debtor's total assets. *See* 11 U.S.C. § 101(32)(A)(ii). Therefore, the amount of debtor's total assets relevant to a solvency determination herein is $21,000.00. The evidence before the court does not support any other adjustment to debtor's financial condition for purposes of the insolvency determination. Taking the evidence in the light most favorable to debtor, the court concludes that at the time debtor transferred the funds to Glass Apple, debtor was insolvent because the sum of his debts of $45,060.00 was greater than all $21,000.00 of his assets, exclusive of the property transferred and property that may be exempted under

§ 522.[8] *See* 11 U.S.C. § 101(32)(A) (defining insolvent as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, ... exclusive of ... property transferred ... and ... property that may be exempted from property of the estate under section 522 ...."). The court holds that because debtor had an interest in the funds prior to the transfer, transferred the funds within one year of the filing of the bankruptcy petition, did not transfer the funds for reasonably equivalent value, and made the transfer while he was insolvent, the elements of § 548(a)(2) are established, and the transfer is thereby avoidable and can be recovered by the trustee.

### C. Recovery of Avoided Transfers

■ Bankruptcy Code § 550(a) permits the trustee to recover property after a transfer has been avoided. The particular theory under which a transfer has been avoided is irrelevant to the liability of the transferee against whom the trustee claims recovery. *See Hooker Atlanta (7) Corp. v. Hocker (In re Hooker Inv., Inc.),* 155 B.R. 332, 337 (Bankr.S.D.N.Y.1993). The intent is to restore the estate to the financial condition it would have enjoyed had the transfer not occurred. *See Aero–*

*Fastener, Inc. v. Sierracin Corp. (In re Aero–Fastener, Inc.),* 177 B.R. 120, 139 (Bankr.D.Mass.1994).

Section 550(a) provides:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 548 ..., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

The trustee seeks to avoid the initial transfer and several subsequent transfers from Glass Apple to debtor and debtor's family members also named as defendants. *See supra* note 2. Section 102(5) of the Code's rules of construction clarifies that "or" is not exclusive. Thus, the trustee under § 550(a) can recover from debtor's "initial transferee," *or* any entity for whose benefit the transfer was made, *or* any subsequent "immediate" *or* "mediate" transferees.[9]

---

**8.** The court's exclusion of the unliquidated judgment for violations of the Federal Wiretapping Act is only for illustrative purposes to show that even in the most favorable light, debtor was still insolvent. Section 101(12) defines debt as a "liability on a claim." Section 101(5) defines "claim" as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"When the definitions of 11 U.S.C. § 101 are applied to the insolvency provisions of § 548, the inescapable conclusion is that all liabilities contingent or otherwise must be considered in determining whether a debtor was insolvent at the time of the transfer in question." *In re Porter,* 37 B.R. at 61 (citing 4 *Collier on Bankruptcy* ¶ 101.26 (Lawrence P. King, ed., 15th ed. rev.1983)). The court believes that if the unliquidated damages for debtor's wiretapping tapping violations were factored into the calculations, the amount of debtor's insolvency would increase substantially.

**9.** While the Code does not define the terms "initial transferee," "immediate transferee," or "mediate transferee," the distinction can be important in § 550(b) if the transferee has taken in good faith.

Section 550 also defines the rights and liabilities of transferees, in some instances protecting them against recovery. The trustee's right of recovery under § 550(a)(2) is limited by § 550(b). Section 550(b) provides:

The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction ... of a present or antecedent debt, in good faith, and without knowledge of voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

■ However, once the plaintiff has established that a party is an immediate or mediate transferee of the initial transferee, a defendant claiming a defense to liability under § 550(b) bears the burden of proof. *See I.R.S. v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049, 1056 (6th Cir.1990), *rev'd on other grounds*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Rodgers v. Monaghan Co. (In re Laguna Beach Motors, Inc.)*, 159 B.R. 562, 566 (Bankr.C.D.Cal.1993); *In re Hooker Inv., Inc.*, 155 B.R. at 337; *Kendall v. Sorani (In re Richmond Produce Co.)*, 151 B.R. 1012, 1021 (Bankr.N.D.Cal.1993), *aff'd*, 195 B.R. 455 (N.D.Cal.1996). Both § 550(b)(1) and (b)(2) require that the transferee take the transferred property in good faith. *See* 11 U.S.C. 550(b).

The phrase "good faith" in this paragraph is not defined in any way. The language of the sections comes from § 4-609(b)(1) of the Commission's Report which was filed with Congress in 1973. The notes accompanying that report state that good faith is a familiar phrase and it was felt that it was best to leave this interpretation to the courts on a case-by-case construction. Good faith has been defined as solely a question of whether the grantee knew or should

have known that he was not trading normally but that on the contrary, the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors.

4 *Collier on Bankruptcy* ¶ 550.03 at 550–8 n. 3 (Lawrence P. King, ed., 15th ed. rev. 1981); *see also Gallant v. Kanterman (In re Kanterman)*, 97 B.R. 768, 779 (Bankr. S.D.N.Y.1989) (quoting *Coleman v. Home Sav. Ass'n (In re Coleman)*, 21 B.R. 832, 836 (Bankr.S.D.Tex.1982)).

■ Good faith is not limited to lack of actual knowledge of actual fraud but also encompasses a lack of knowledge of circumstances requiring further investigation. *See In re Kanterman*, 97 B.R. at 779; *see also Bonded Fin. Serv. v. European Am. Bank*, 838 F.2d 890, 897–98 (7th Cir.1988) ("recipient of a voidable transfer may lack good faith if he possessed enough knowledge of the events to induce a reasonable person to investigate"). "A person is not a 'good faith transferee' if he has knowledge of the transferor's unfavorable financial condition at the time of the transfer." *Grant v. Podes (In re O'Connell)*, 119 B.R. 311, 317 (Bankr.M.D.Fla.1990); *accord Cohen v. Sutherland*, 257 F.2d 737, 742 (2d Cir.1958) (analyzing lack of good faith based on transferee's knowledge of the financial position of the bankrupt); *Dokken v. Page*, 147 F. 438, 440–42 (8th Cir.1906) (finding lack of good faith where transferee has knowledge that the debtor is transferring almost all of its assets).

■ The court finds that debtor, his family members, (i.e., defendants Katina Smoot, Cory Smoot, and Gina Smoot), and Glass Apple through its officers, were aware of debtor's unfavorable financial condition at the time of the transfer from the CanDo Credit Union to Glass Apple and that the transfer represented almost all of his assets. The court concludes that

the transfers challenged by the trustee, including the initial transfer to Glass Apple and subsequent transfers to the debtor, Katina Smoot, Cory Smoot, and Gina Smoot, lacked good faith; thus these transferees are not accorded the protections found in § 550(b). Therefore, the trustee can recover from any combination of the entities mentioned above, either the funds transferred or the value of the funds transferred, up to the extent that the challenged transfers are being avoided; subject to the limitation of a single satisfaction set forth in § 550(d).

## II.

■ The next issue before the court is whether a transfer avoided and recovered by the trustee can still be claimed as exempt. The debtor and Glass Apple assert that even if the trustee avoids the voluntary transfer of the personal injury settlement proceeds from the debtor to Glass Apple, the recovered assets will not lose the exempt status provided for under Virginia Code § 34–28.1.

The exclusive federal statutory mechanism for a debtor in bankruptcy to assert exemption rights after the trustee has exercised his or her avoidance powers is found in Bankruptcy Code § 522(g). *See Kepler v. Weis (In re Weis)*, 92 B.R. 816, 821 (Bankr.W.D.Wis.1988). To the extent that the limitations on debtor's claim of exemptions as provided in § 522(g) conflicts with allowable exemptions under Virginia Code § 34–28.1, the Supremacy Clause of the U.S. Constitution provides that the federal law is supreme, and the

conflicting state law is rendered void. *See* U.S. Const. art. VI, cl. 2. The Supreme Court has held that any state legislation which frustrates full effectiveness of federal law is rendered invalid by the Supremacy Clause, even though the state legislature had some purpose in mind other than one of frustration. *See Perez v. Campbell*, 402 U.S. 637, 651–52, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

The Bankruptcy Code grants the debtor the power to exempt recovered property, albeit in a carefully qualified form. Among the sections that grant the trustee the power to avoid transfers are §§ 544 (the strong arm clause) and 548 (fraudulent transfers). Once the transfer is avoided, § 550(a) allows the trustee to recover the property or its value from the initial transferee or any immediate or mediate transferee of the initial transferee. Property recovered under § 550(a) is retained for the benefit of the estate and becomes property of the estate under § 541(a)(3). As stated above, § 522(g) then provides the conditions under which the debtor may exempt property that the trustee recovers under the enumerated sections.[10]

For the debtor to exercise his exemption rights under § 522(g), two conditions must be met. *See Kepler v. Weis (In re Weis)*, 92 B.R. 816, 821 (Bankr.W.D.Wis.1988). First, the debtor must have been able to exempt the property if the property had not been transferred. Second, the transfer of the otherwise exempt property must have been *involuntary*, and the debtor must not have concealed the property. In

---

**10.** Section 522(g) states:

Notwithstanding [§§] 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under [§] 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection

(b) of this section if such property had not been transferred, if—

(1)(A) *such transfer was not a voluntary transfer of such property by the debtor;* and

(B) the debtor did not conceal such property; ....

(emphasis supplied).

142

this case, neither the debtor nor Glass Apple have claimed that the transfer was nonconsensual. Inasmuch as the transfer of the debtor's interest in the settlement proceeds was voluntary, to the extent that the trustee is successful in her avoidance actions, the debtor will not be able to exempt property brought into the bankruptcy estate. *See* 11 U.S.C. § 522(g)(1)(A).

## III.

In Count V of the complaint the trustee asserts that the debtor transferred the property with the intent to hinder, delay, or defraud his creditors, and that accordingly, his discharge should be denied pursuant to § 727(a)(2)(A). This provision precludes the grant of a discharge in favor of a debtor if—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under title 11 has transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of filing of the petition. . . .

■ The trustee bears the burden of establishing that the transfer occurred with the intent to hinder, delay, or defraud creditors. *See Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90–91 (5th Cir. 1989). To deny debtor's discharge on the ground that he transferred property with intent to hinder, delay or defraud creditors, the bankruptcy court must find actual intent to hinder, delay, or defraud creditors; constructive intent does not suffice. *See Cullinan Assoc., Inc. v. Clements*, 205 B.R. 377, 380 (W.D.Va.1995). The question of whether a debtor has the requisite intent is a question of fact. Actual intent, however, may be inferred from the actions of debtor and may be proven by circumstantial evidence.

■ In *Riggs National Bank v. Andrews (In re Andrews)*, 186 B.R. 219, 222 (Bankr.E.D.Va.1995), this court detailed factors evidencing actual intent to defraud under § 727(a)(2)(A):

(1) A relationship between the debtor and the transferee; (2) Lack of consideration for the conveyance; (3) Debtor's insolvency or indebtedness; (4) Transfers of debtor's entire estate; (5) Reservation of benefits, control, or dominion by the debtor; (6) Secrecy or concealment of the transaction; and (7) Pendency or threat of litigation at the time of transfer.

The presence of just one of the factors can warrant a court's conclusion that a transfer was fraudulently made, and certainly, the presence of several factors can inescapably lead to the conclusion that the debtor possessed the requisite intent.

■ The court has already found that for purposes of § 548(a)(1), the debtor transferred funds to Glass Apple with actual intent to hinder, delay or defraud creditors. The transfer of property challenged in this case reveals many of the indicia of fraud. First, debtor is related to the transferee, a closely-held corporation owned entirely by debtor's family. Second, debtor received inadequate consideration for the conveyance. Third, debtor was technically insolvent at the time of the transfer. Fourth, with the exception of two secured vehicles and a property for which an exemptions were claimed, the transfer constituted debtor's entire estate. Fifth, as president of the transferee, debtor has retained control of the funds. Finally, debtor transferred the settlement proceeds on the same day that the proceeds were received, with full knowledge that he had already been found liable in another case and that the court had taken the amount of damages under advisement.

These factors are sufficient to create a presumption of debtor's intent to defraud, thereby establishing the trustee's *prima facie* case and shifting the burden of lack of fraudulent intent to the defendants.

Debtor and defendant Glass Apple claim that there could not have been any fraudulent intent because the funds transferred to Glass Apple were exempt under state law. They imply that this is sufficient to rebut the trustee's *prima facie* case. Contrary to their assertion, they have not rebutted the trustee's *prima facie* case. According to debtor's testimony, he did not know the proceeds were exempt at the time of the transfer and did not discover that they were exempt until he was in the process of filling out his bankruptcy schedules. Debtor and Glass Apple have failed to consider the ramifications of the transfer under federal bankruptcy law, to explain why no consideration was received by debtor, or to explain why debtor did not retain an interest in the family corporation. Based on the weight of the evidence and the existence of several indicators of fraud, the court finds that debtor transferred the property with the intent to defraud his creditors and that accordingly his discharge should be denied pursuant to § 727(a)(2)(A).

## IV.

Finally, in Count VI of the complaint, the trustee asserts that Glass Apple, Inc., is a mere alter ego of debtor and should be fully liable for all of debtor's debts. The trustee states that it would be inequitable to, and would perpetrate a fraud on, debtor's creditors if Glass Apple were not found to be fully liable for debtor's debts. Customarily, the doctrine of piercing the corporate veil is an equitable principle employed to hold a corporate insider liable for corporate acts. *See Smith v. Richels (In re Richels)*, 163 B.R. 760, 763 (Bankr.E.D.Va.1994); *Guinee v. Heydt (In re Wilson)*, 90 B.R. 208, 212 (Bankr. E.D.Va.1988). In a reverse veil-piercing claim, either a corporate insider or a person with a claim against a corporate insider attempts to have the insider and the corporate entity treated as a single person. *See* Gregory S. Crespi, *The Reverse Pierce Doctrine: Applying Appropriate Standards*, 16 J. CORP. L. 33, 36 (Fall 1990); *see also In re Richels*, 163 B.R. at 763; *In re Wilson*, 90 B.R. at 212. Reverse veil-piercing claims of the type sought by the trustee are brought very infrequently and the case law is not well-developed.[11] Since this court has already held that the transfer is avoidable under §§ 548(a)(1) and 548(a)(2), can be recovered by the trustee under § 550(a), and cannot be exempted under § 522(g), the court need not rule on the trustee's reverse veil-piercing claim.[12]

In summary, the court will enter judgment against the trustee on the state law

---

11. In his article, Mr. Crespi analyzes reverse veil piercing claims by placing them into two categories: claims brought by corporate insiders, and claims brought by "outsiders." With respect to claims brought by outsiders, which is the type that the trustee seeks to bring in this case, he observes:

> Fewer than twenty cases decided over the last sixty years have involved outsider reverse piercing claims, and most of these are the only such case in their jurisdiction. Interestingly, slightly over half of these opinions have upheld the reverse piercing claims; the rest have denied them. Be-

cause outsider reverse piercing claims usually present cases of first impression to the courts, the opinions draw freely upon similar cases that have arisen in other jurisdictions.

*See* Gregory S. Crespi, *The Reverse Pierce Doctrine: Applying Appropriate Standards*, 16 J. CORP. L. at 56.

12. The court expressly declines to decide the trustee's alter ego/reverse veil piercing claim. However, the court notes that what the trustee seeks in essence is to subject the corporate assets to claims of the debtor's creditors by

counts under § 544(b) but holds that the trustee has established that the transfer of exempt personal injury proceeds is voidable pursuant Bankruptcy Code §§ 548(a)(1) and 548(a)(2) and can be recovered from the defendants under § 550(a) to the extent that the initial and subsequent transfers are avoided. The debtor cannot claim exemptions under § 522 for property that is avoided and recovered by the trustee. Moreover, debtor will be denied a discharge pursuant to § 727(a)(2)(A) because the court finds that he transferred the property with the intent to defraud his creditors. Finally, the court declines to rule on the trustee's alter ego/reverse veil-piercing claim.

The trustee in bankruptcy is requested to present to this court a judgment order in conformity with this opinion.

having the court disregard the corporate entity. If the court were to disregard the corporate entity and treat Glass Apple and Kenneth Smoot as one and the same person, I believe that in this limited situation the debtor would still be entitled to claim the assets on hand on the bankruptcy petition filing date as exempt under Virginia Code § 34–28.1. Thus, it is doubtful that judgment in the trustee's favor on this count would benefit the estate.