**In re Lakshmi Narsingh SAMPATH, Debtor.**

No. 02–81522–RGM.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

July 22, 2004.

Scott J. Newton, Stephens, Boatwright, Primeau & Cooper, Manassas, VA, for Debtor.

Gordon P. Peyton, Redmon, Peyton & Braswell, Alexandria, VA, pro se.

## MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

The debtor claimed his interest in a condominium unit owned by him, his wife and their daughter as joint tenants with the common-law right of survivorship exempt as tenancy by the entirety property. The chapter 7 trustee objected because the debtor's marital status was not recited in the deed. The court concludes that the debtor's interest in the real property is held by the debtor and his spouse as tenants by the entirety with the common-law

right of survivorship and that the property is exempt from the individual creditors of the debtor, but not the joint creditors of the debtor and his spouse.

## I. Introduction

### A. Factual Background

The debtor, his wife and their daughter purchased a condominium unit in 1997. It was titled in the form of "A, B and C, as joint tenants with the common-law right of survivorship."[1] The deed nowhere recites the marital relationship between the debtor and his wife. It is stipulated that the grantees are the debtor, his wife and their daughter. It is also stipulated that the debtor and his wife were married to each other when they acquired the property and have remained married to each other without interruption since then.

### B. Question Presented

The question presented is whether the martial status of a husband and wife is required to be recited on the face of a deed in order to create a valid tenancy by the entirety when the conveyance is to three individuals: the husband and wife and a third party.

### C. Positions of the Parties

The debtor asserts that he and his wife own their interest in the property[2] as tenants by the entirety with the common-law right of survivorship and that they hold their entirety interest as a joint tenant with the common-law right of survivorship with their daughter. He argues that the marital status of the grantees need not be recited in the deed to create a tenancy by the entirety. He relies principally on *In re Zella*, 202 B.R. 712 (E.D.Va.1996) where the district court in discussing *Allen v. Parkey*, 154 Va. 739, 149 S.E. 615 (1929) stated that "What *Allen* makes clear is that in Virginia, a conveyance to a husband and wife together coupled with the intent that there be survivorship rights always creates a tenancy by the entirety." *Id.* at 714.

The trustee asserts that the marital status must be stated on the face of the deed and without the recitation, the three grantees each own a one-third interest as joint tenants with the right of survivorship. He relies principally on *Wolfe v. Sprouse*, 183 B.R. 739 (W.D.Va.1995). In *Wolfe v. Sprouse*, the district court held that two promissory notes payable to the debtor and his spouse, "or the survivor" were not held as tenants by the entirety because "the language of the [instrument] . . . lack[ed] even the hint of a marital relationship." *Id.* at 742. The district court found the notes were held by the husband and wife as joint tenants with the right of survivorship, but not as tenants by the entirety.

### D. Significance of Estate Held

■ The significance of the difference between the trustee's position and the

---

1. The deed of conveyance states:
 THIS SPECIAL WARRANTY DEED, made this 2nd day of September, 1997, by and between *TYSONS II RESIDENTIAL, L.L.C.*, a Virginia limited liability company, Grantor, and *Shree Ayengar, Lakshmi N. Sampath and Sheila Sampath,* "Grantee".
 * * *WITNESSETH* * * *
 That for and in consideration of the sum of $10.00 in hand paid, receipt of which is hereby acknowledged, Grantor does grant and convey with special warranty of title unto Grantee, as joint tenants, with the right of survivorship as at common law, the following described property. . .

2. The fact that the real property considered in this case is a condominium unit is not relevant. A "condominium unit constitutes for all purposes a separate parcel of real estate." Va.Code (1950) § 55–79.42.

debtor's position is that a debtor's interest held with his spouse as tenants by the entirety with the common-law right of survivorship is exempt from claims of the debtor's individual creditors, but not their joint creditors. *Rogers v. Rogers,* 257 Va. 323, 326, 512 S.E.2d 821, 822 (1999) ("[R]eal property held as tenants by the entireties is exempt from the claims of creditors who do not have joint judgments against the husband and wife."); *Vasilion v. Vasilion,* 192 Va. 735, 740, 66 S.E.2d 599, 602 (1951) ("It follows that the entirety is liable for the joint debts of both spouses and is reachable against them by proper process ... But where a tenancy by the entirety in the fee simple is once created the property is completely immune from the claims of creditors against either husband or wife alone."). In this case, no joint creditor was scheduled or has filed a proof of claim. The property is, therefore, entirely exempt from the bankruptcy estate if held as tenants by the entirety. *In re Bunker,* 312 F.3d 145, 151 (4th Cir. 2002); *Williams v. Peyton,* 104 F.3d 688, 690 (4th Cir.1997); *Reid v. Richardson,* 304 F.2d 351, 353 (4th Cir.1962) ("[U]nder Virginia law property held by the entireties is not subject in any manner to individual claims of creditors of one spouse, and ... neither the land itself nor any interest therein may be reached in satisfaction in a separate judgment against only one of them.").

 The law is different with joint tenants with the right of survivorship. A joint tenant's interest is subject to his individual and joint creditors' claims. The property can be partitioned and the debtor's interest sold to satisfy a judgment lien creditor's claim. Va.Code (1950) § 8.01–81; *Jones v. Conwell,* 227 Va. 176, 314 S.E.2d 61 (1984). A debtor's interest as a joint tenant is not exempt from the bankruptcy estate.

## II. Discussion

### A. Tenancy by the Entirety at Common Law

### 1. The Common Law Rule

 Virginia real property law is deeply rooted in the common law. Virginia adopted the common law of England in effect at the time of independence insofar as it is not repugnant to the principles of the Bill of Rights or the Constitution of Virginia. Va.Code (1950) §§ 1–10 and 1–11; *In re Strikwerda,* 216 Va. 470, 220 S.E.2d 245 (1975). At common law, every conveyance of real property by deed to a husband and wife created a tenancy by the entirety. *See* 41 Am.Jur.2d, *Husband and Wife,* § 31 (2004). This was founded on the common-law doctrine that husband and wife were one juridic person. They could not take separate parts, or moieties,[3] of the property. They were seised *per tout et non per my,* that is, by the whole *(per tout)* and not by the part or share *(per my).* There was but one part: the entirety of the property. It was neither a con-

---

**3.** The word "moieties" is no longer commonly used by lawyers in their everyday conversations or legal documents. Instead, they speak in terms of interests, such as an ownership interest or an undivided interest. Black's Law Dictionary defines moiety as "1. A half of something (such as an estate). 2. A portion less than half; a small segment." Blacks' Law Dictionary 1021 (7th ed.1999). While cases refer to a moiety as a half-interest in real property, it is more generally each inter- est or part of the property. Each owner has his own moiety in the property. If there are two owners, there are two moieties, each being a one-half interest in the property. If there are three owners, there are three moieties, each being a one-third interest in the property. The term "moiety" was not used to refer to the interest of a sole owner of property. He owned the "entirety" not the "sole moiety."

current ownership nor a joint estate, but rather an individual ownership, an estate owned by a single juridic entity.

The best single source of the common law of England as of July 4, 1776, is Blackstone's *Commentaries on the Laws of England.* The *Commentaries* were published in four volumes from 1765 through 1769. The second volume, titled "Of the Rights of Things," encompasses property law. It was published in 1766. Chapter 12 of Volume II is titled "Of Estates in Severalty, Joint–Tenancy, Coparcenary, and Common." Blackstone starts the chapter:

> We come now to treat of estates, with respect to the number and connexions of their owners, the tenants who occupy and hold them. And, considered in this view, estates of any quantity or length of duration, and whether they be in actual possession or expectancy, may be held in four different ways; in severalty, in joint-Tenancy, in coparcenary, and in common.
>
> I. He that holds lands of tenements in *severalty,* or is sole tenant thereof, is he that holds them in his own right only, without any other person being joined or connected with him in point of interest, during his estate therein. This is the most common and usual way of holding an estate; and therefore we may make the same observations here, that we did upon estates in possession, as contradistinguished from those in expectancy, in the preceding chapter: that there is lit-

tle or nothing peculiar to be remarked concerning it, since all estates are supposed to be of this sort, unless where they are expressly declared to be otherwise; and that, in laying down general rules and doctrines, we usually apply them to such estates as are held in severalty. I shall therefore proceed to consider the other three species of estates, in which there are always a plurality of tenants.

2 William Blackstone, *Commentaries on the Laws of England* 179 (1766) (reprinted facsimile of the first edition, The University of Chicago Press, Chicago, 1979) (Italics in original). After having so quickly dispatched estates in severalty,[4] he spends the rest of chapter 12 discussing, as the title suggests, joint tenancy, coparcenary and tenancy in common. *Id.* at 180–194. There is no mention of tenancy by the entirety. In fact, there is no mention of tenancy by the entirety in any of the first eight editions of Blackstone's *Commentaries,* all of which were published during his lifetime. The reason was simply that tenancy by the entirety was considered held in severalty, that is, as an individual estate and not as an estate "in which there are always a plurality of tenants." *Id.* at 179. This was because of the legal unity of husband and wife.

Blackstone explains the legal principle of the unity of husband and wife in Book I, Chapter 15, "Of Husband and Wife":

---

4. "Several" and "severalty" are words that are no longer favored by lawyers. Today they prefer "individual." "Several" is too easily confused with the principal contemporary meaning of "being more than two but fewer than many in number or kind." *Webster's New Universal Unabridged Dictionary* (Barnes & Noble Books, New York, 1996). Black's Law Dictionary captures the ambiguity. It gives three definitions for "several": "1. (Of a person, place, or thing) more than one or two but not a lot, several witnesses. 2. (Of liability, etc.) separate; particular; distinct, but not necessarily independent, a several obligation. 3. (Of things, etc.) different; various, <several settlement options.>" Black's Law Dictionary 1378. When lawyers use the word "several" as a term of art, they are generally using it in the second sense to mean separate or individual, such as "joint and several liability," a phrase that is not redundant.

By marriage, the husband and wife are one person in law: that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband: under whose wing, protection and *cover*, she performs every thing; and is therefore called in our law-french a *feme-covert* ... Upon this principle, of an union of person in husband and wife, depend almost all the legal rights, duties, and disabilities, that either of them acquire by the marriage. I speak not at present of the rights of property, but of such as are merely *personal*. For this reason, a man cannot grant any thing to his wife, or enter into covenant with her: for the grant would be to suppose her separate existence; and to covenant with her, would be only to covenant with himself: and therefore it is also generally true, that all compacts made between husband and wife, when single, are voided by the intermarriage. A woman indeed may be attorney for her husband; for that implies no separation from, but is rather a representation of, her lord. And a husband may also bequeath any thing to his wife by will; for that cannot take effect till the coverture is determined by his death....

But, though our law in general considers man and wife as one person, yet there are some instances in which she is separately considered; as inferior to him, and acting by his compulsion. And therefore all deeds executed, and acts done, by her, during her coverture, are void, or at least voidable; except it be a fine, or the like matter of record, in which case she must be solely and secretly examined, to learn if her act be voluntary. She cannot by will devise lands to her husband, unless under special circumstances; for at the time of making it she is supposed to be under his coercion....

These are the chief legal effects of marriage during the coverture; upon which we may observe, that even the disabilities, which the wife lies under, are for the most part intended for her protection and benefit. So great a favourite is the female sex of the laws of England.

1 Blackstone, *Commentaries* at 430–433. *See also* 2 Blackstone, *Commentaries* at 433.

■■■ The unity of the husband and wife is the reason that a conveyance to husband and wife created an estate in severalty and not a joint tenancy. In a tenancy by the entirety there was only one owner, the juridic entity consisting of the marital unit, the husband and wife. There was only a single entirety of the property, not two moieties. "This reason was, that husband and wife are one in law, and there are no moieties between them." *Thornton v. Thornton*, 24 Va. (3 Rand.) 179, 184 (1825). "[A]ll the cases shew, that between husband and wife, there are no parts or moieties, nothing which the act of the one can take from, or his death add to, the other." *Id.* at 186–187. A joint tenancy, on the other hand, required two or more owners. "An estate in *joint-tenancy* is where lands or tenements are granted to two or more persons, to hold in fee-simple, fee-tail, for life, for years, or at will." 2 Blackstone, *Commentaries*, at 180 (Italics in original).[5] Each joint tenant held his own moiety, his own separate interest in the property. If there were two unrelated joint tenants, there were two moieties, one vested in each joint tenant. However, if the two individuals were husband and wife,

---

**5.** A joint tenancy required the four unities of interest, title, time and possession; otherwise the property is held as a tenancy in common. 2 Blackstone, *Commentaries* at 180–182.

"being considered one person in law, they cannot take the estate by moieties, but both are seised of the entirety." 2 *Tucker on Blackstone's Commentaries* at 182 (1803). Thus, the essential difference between a tenancy by the entirety and a joint tenancy was that there was only one owner of the tenancy by the entirety—the united husband and wife—but two (or more) owners of the joint tenancy. A "single moiety"—the entirety of the property—was held by the husband and wife in a tenancy by the entirety, but two (or more) moieties were held by the unrelated joint owners in the joint tenancy.

Blackstone's famous comment on tenancy by the entirety first appeared in the ninth edition of his *Commentaries* which was published in 1783. It was the first edition published posthumously, Blackstone having died in 1780.[6] The comment is concise:

> And therefore, if an estate in fee be given to a man and his wife, they are neither properly joint-tenants, nor tenants in common: for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, per tout et non per my; the consequence of

which is that neither the husband nor wife can dispose of any part without the assent of the other, but the whole must remain to the survivor.

2 William Blackstone, *Commentaries on the Laws of England* 182 (Richard Burn, ed., 9th edition, 1783) quoted in Peter M. Carrozzo, *Tenancies in Antiquity: A Transformation of Concurrent Ownership for Modern Relationships*, 85 Marq.L.Rev. 423, 437 (2001).

Blackstone's posthumous comment draws a sharp distinction between the tenancy by the entirety and estates with multiple owners. Joint tenancies had long been described as *"per my et per tout."*[7] Blackstone turned the well-known phrase around—he describes a tenancy by the entirety as *"per tout et non per my"*—thereby juxtaposing the essential difference between the joint tenancy and the tenancy by the entirety. Tucker also makes this clear in his comment to Blackstone's posthumous reference to tenancies by the entirety. 2 *Tucker's Commentaries* at 182 n. 3.

 The same common-law rules discussed by Blackstone are carried forward and discussed in major treatises to the present.[8] While first published more

---

**6.** Peter M. Carrozzo, relying on the work of Catherine Spicer Eller, *The William Blackstone Collection in the Yale Law Library: A Bibliographical Catalogue* (1938) concludes that the comment added by Richard Burn, the editor of the ninth edition, is "from the pen of Blackstone." Peter M. Carrozzo, *Tenancies in Antiquity: A Transformation of Concurrent Ownership for Modern Relationships*, 85 Marq.L.Rev. 423, 437 n. 154 (2001).

**7.** Blackstone described joint tenancies as follows:

> Joint-tenants are said to be seised *per my et per tout*, by the *half* or *moiety*, and by *all*; that is, they each of them have the entire possession, as well of every *parcel* as of the *whole*. They have not, one of them a seisin of one half or moiety, and the other of the other moiety; neither can one be exclusively seised of one acre and his companion of another; but each has an undivided moiety of the whole, and not the whole of an undivided moiety.

2 Blackstone, *Commentaries* at 182. (Italics in original).

**8.** Blackstone's analysis is followed by American and Virginian commentators: St. George Tucker in his treatise, *Blackstone's Commentaries with Notes of Reference, to the Constitution and Laws, of the Federal Government of the United States; and of the Commonwealth of Virginia* (1803), 2 *Tucker's Commentaries* 180–182; John Tayloe Lomax in his treatise, *Real Property* 616 (1855); James Kent in his *Commentaries on American Law* (reprinted by

than 75 years ago, Minor on Real Property (Ribble ed., 2nd edition, 1928) is still considered authoritative. The discussion of tenancy by the entirety has expanded from Blackstone's pithy posthumous comment and is now included in the discussion of estates with a plurality of tenants: joint tenancy, tenancy in common and tenancy in coparcenary. 2 Minor on Real Property § 853. Minor's discussion of the attributes of a tenancy by the entirety and a joint tenancy are fully in accord with Blackstone. While the legal community now casually discusses tenancy by the entirety as if it were an estate with multiple owners, and while a tenancy by the entirety has much in common with a joint tenancy, Minor still identifies the origin of the tenancy by the entirety estate as "the common law principle that *the husband and wife are but one person.*" 2 Minor on Real Property § 853 (Emphasis in original). This foundation is the very reason for the differences between a joint tenancy and a tenancy by the entirety. Since the husband and wife are considered as one, they own a single and indivisible interest. It follows that the property cannot be conveyed, encumbered or partitioned unless all those who constitute the single and indivisible interest consent. Creditors of either husband or wife have all of the rights of the individual debtor but no greater rights. They cannot partition the property to satisfy their claims any more than the husband or the wife could if acting alone. On the other hand, where two people are joint tenants, each has a separate interest, a separate moiety. Each controls his own moiety and may independently convey it, encumber it or partition

it. Thus, a creditor of one of the individuals can reach that individual's interest in the property.

The common-law rule was that a conveyance to a husband and wife—assuming the presence of all the unities—created, by virtue of the legal unity of the husband and wife, a tenancy by the entirety and no other estate.

## 2. The Common Law Rule and Additional Unrelated Owners

The unity of the husband and wife resulted in a single interest in them, not two moieties as was the case with unmarried joint tenants. This led to the result that if real property was conveyed to three people, two of whom were husband and wife, the three took two moieties—one in the married couple and one in the third party. Lomax, *Real Property* at 616. It followed that if there were two moieties, the married couple owned a one-half interest in the property as did the third party. If the property was conveyed to four individuals, two of whom are husband and wife, there were three moieties. The married couple owned a one-third interest in the property. Each of the other two owners also owned a one-third interest. Or, as Tucker stated in 1803 in his question in his footnote, "for, by the common law, if a grant is made of a joint-estate to husband and wife, and a third person, the husband and wife shall have one moiety, and the third person the other moiety, in the same manner as if it had been granted only to two persons. So, if the grant is to husband and wife, and two

Da Capo Press, 1971), 2 *Kent's Commentaries* 109–14 and 4 *Kent's Commentaries* 353–360; O.W. Holmes, Jr. as editor of the twelfth edition of *Kent's Commentaries* (O.W. Holmes, Jr., ed., 12th edition, 1873) (reprinted by Fred B. Rothman & Co.1989), 2 *Kent's Commentar-ies* 129–135 and 4 *Kent's Commentaries* 358–366; and Herbert Thorndike Tiffany in his treatise, *Real Property* (1912), Tiffany on Real Property §§ 161, 165 and 501. Lomax was the first law professor at the University of Virginia (1826–1830).

others, the husband and wife take one-third in joint-tenancy. Litt. §. 291." 2 *Tucker's Commentaries* at 181 n. 3.

James Kent in his *Commentaries on American Law* follows both Blackstone and Tucker. After discussing severance of joint tenancies, he states:

> The destruction of joint tenancies to the extent which has been stated, does not apply to conveyances to husband and wife, which, in legal construction, by reason of the unity of husband and wife, are not strictly joint tenancies, but conveyances to one person. They cannot take by moieties, but they are both seised of the entirety, and the survivor takes the whole, and, during their joint lives, neither of them can alien so as to bind the other. If an estate be conveyed expressly in joint tenancy, to a husband and wife, and to a stranger, the latter takes a moiety, and the husband and wife, as one person, the other moiety.

4 *Kent's Commentaries* at 358–59. *Accord* 4 *Kent's Commentaries* 362–63 (O.W. Holmes, Jr., ed., 12th edition, 1873).

Minor reaches the same conclusion in 1928:

> It is not essential, however, that the husband and wife should be the *only grantees or devisees;* but if there are other grantees, the husband and wife (because of their *legal identity* ) are regarded as *one person* only, so that they take *only one share between them,* not a share apiece. Thus, if land be granted or devised to a husband and wife *and another,* the husband and wife *prima facie* at least, take *one-half* of the estate between them and the third person *the other half.*

2 Minor on Real Property, § 853 (Italics in original).

▆▆▆ The common-law rule of conveyances to husband and wife was not altered if there was an additional grantee. The husband and wife took a single moiety which was held by them as tenants by the entirety. The husband and wife held their single moiety as tenants in common or joint tenants with the other grantee or grantees.

### 3. Necessity for Recitation of Marital Status at Common Law

▆▆▆ At common law the fact of marriage, not the recitation of marriage, created the tenancy by the entirety. Assuming the presence of the four unities—interest, title, time and possession—the presence or absence of the fifth unity—marriage—determined whether a joint tenancy or a tenancy by the entirety was created. As a matter of common law, a husband and wife held their interest as tenants by the entirety and in no other manner. As Blackstone stated, "Upon this principle, of an union of person in husband and wife, depend almost all the legal rights, duties, and disabilities, that either of them acquire by the marriage." 1 Blackstone, *Commentaries* at 430. None of the treatises suggests anything to the contrary. None suggests that at common law the marital status of the husband and wife must be stated in the deed in order to create a tenancy by the entirety estate. None discusses the consequences of the failure to recite the marital status of a married couple on the creation of a tenancy by the entirety estate.

▆▆▆ Case law is explicit that the same words of conveyance which make other grantees joint tenants make a husband and wife tenants by the entirety. *Vasilion v. Vasilion,* 192 Va. at 739, 66 S.E.2d at 602 ("Under the common law the same words of conveyance which would make other grantees joint tenants will make a husband and wife tenants by the entireties."); *Thornton v. Thornton,* 24 Va. (3 Rand.) at

185 ("[T]he same words in a conveyance to husband and wife, that would make a joint-tenancy in others, gives the entirety to them."). *See also* 2 *Kent's Commentaries* at 111–12;[9] *Hoag v. Hoag,* 213 Mass. 50, 53, 99 N.E. 521, 523 (1912) ("one of the principal common-law rules of construction upon this subject is that the same words of conveyance which would make other grantees joint tenants will make a husband and wife joint tenants by entirety."); *Griffin v. Prince,* 632 S.W.2d 532, 535 (Tenn.1982) (same). None of the cases qualify the statement. None say that the same words of conveyance that would create a joint tenancy in others, creates a tenancy by the entirety in husband and wife, *if their marital status is recited somewhere in the deed.* It is the fact of marriage, not the recitation of marriage that controls. *Chandler vs. Cheney,* 1871 WL 5078, *2, 37 Ind. 391, 393, 1871 Ind. LEXIS 416, *5 (1871). The principle of the unity of the husband and wife precludes any other estate.[10]

■ The fact of marriage, not its recitation, governs other property rights. Marriage creates other rights, for example, dower and curtesy.[11] The fact of marriage is important and well-drafted deeds commonly recite the martial status of grantors and grantees. However, the recitation is neither mandatory nor conclusive. It merely constitutes *prima facie* evidence of that fact. Va.Code (1950) § 8.01–389(C). Case law addresses erroneous recitations.

■ The failure to recite a grantor's marital status does not deprive the spouse of dower or curtesy rights. The recitation of martial status of the grantor is important to the grantee so that the grantee may determine whether there is an outstanding inchoate dower or curtesy interest and if so, whether the owner's spouse relinquished it upon conveyance of the property. *See* Va.Code (1919) § 5135 *recodified as* Va.Code (1950) § 55–40 and § 64.1–19 *repealed by* Va.Code (1950) § 64.1–19.2 *effective* January 1, 1991; *God v. Hurt,* 218 Va. 909, 241 S.E.2d 800 (1978) *rehearing* 219 Va. 160, 247 S.E.2d 351 (1978); *Powell v. Tilson,* 161 Va. 318, 328–329, 170 S.E. 750, 754 (1933).

Case law addresses erroneous recitations. There is the recurrent problem of

---

**9.** Chancellor Kent follows Blackstone in his lecture on husband and wife. Kent notes that, "The legal effects of marriage, are generally deducible from the principle of the common law, by which the husband and wife are regarded as one person." 2 *Kent's Commentaries* at 109. Like Blackstone, he states:

> If an estate in land be given to the husband and wife, or a joint purchase be made by them, during coverture, they are not properly joint tenants, nor tenants in common, for they are but one person in law, and cannot take by moieties. They are both seised of the entirety, and neither can sell without the consent of the other, and the survivor takes the whole. *The same words of conveyance, which would make two other persons joint tenants, will make the husband and wife tenants of the entirety.*

2 *Kent's Commentaries* at 111–12 (Emphasis added.).

**10.** A husband and wife could hold real estate as joint tenants or as tenants in common. But, this arose from circumstances that preclude a tenancy by the entirety, that is, one of the five unities was absent at the creation of the tenancy. 2 Minor on Real Property § 853 n. 7. For example, they may have acquired the property before they were married or, although married, they may have acquired their interests at different times. *See Norman v. Cunningham,* 46 Va. (5 Gratt.) 63 (1848); *In re Walker's Estate,* 340 Pa. 13, 16 A.2d 28 (1940) (unities of title and time absent).

**11.** Dower and curtesy were abolished in Virginia effective January 1, 1991. Va.Code (1950) § 64.1–19.2. It was replaced with the augmented estate.

the deed that conveys property to a man and a woman expressly as tenants by the entirety and which describes them as husband and wife when in fact they are not married. In every instance, the recitation is ignored and the actual fact controls. *Gant v. Gant*, 237 Va. 588, 379 S.E.2d 331 (1989); 2 Minor on Real Property, § 853. "It is the fact and not the description or want of description which determines the question." *McLaughlin v. Rice*, 185 Mass. 212, 214, 70 N.E. 52 (1904). *See also Bennett v. Hutchens*, 133 Tenn. 65, 69, 179 S.W. 629, 630 (1915); *Cole Mfg. Co. v. Collier*, 95 Tenn. 115, 31 S.W. 1000 (1895); Wendy Evans Lehman, Annotation, *Estate Created by Deed to Persons Described as Husband and Wife but Not Legally Married*, 9 A.L.R.4th 1189 (1981).

■ Virginia courts routinely look beyond the four corners of a deed when marital status is concerned. No recitation of the party's marital status is binding and parole evidence of the actual marital status is accepted without comment. In *Gant v. Gant*, 237 Va. 588, 379 S.E.2d 331 (1989), the deed conveyed the real property to "Junius W. Gant and Helen T. Gant, his wife ... to be held and owned by them ... as tenants by the entireties with the right of survivorship as at common law...." *Id.* at 589, 379 S.E.2d at 331. Junius and Helen divorced two years before they bought the property together and never remarried. Junius later married Sue Ellen. He died intestate. His widow, Sue Ellen, sued his former wife, Helen, seeking partition of the property, arguing that because Junius and Helen were not married when they acquired the real property, they held it as tenants in common, notwithstanding the recitation of marital status in the deed and the language describing the estate conveyed. The Virginia Supreme Court[12] held that the five unities are required to create a tenancy by the entirety: title, estate, time, possession and persons. *Id.* at 591, 379 S.E.2d at 332. "The unity of persons relates to marriage and embodies the common-law fiction that husband and wife are one." *Id.* at 591 379 S.E.2d at 332–33. Where all the unities are present except marriage, it is a joint tenancy. *Id.* at 591–92, 379 S.E.2d at 333.

In *Funches v. Funches*, 243 Va. 26, 413 S.E.2d 44 (1992), Ronald and Pranee Funches believing themselves to be married purchased real property. The deed conveyed the property to them as tenants by the entirety with the common-law right of survivorship. Ronald Funches had previously married Gisele Funches whom he thought he had divorced. Ronald died. Gisele sued Pranee. She asserted that she and Ronald had never divorced, that the subsequent marriage to Pranee was bigamous and hence void, and therefore, that Ronald and Pranee held the real property as tenants in common. She demanded her dower interest in Ronald's one-half interest. Again, the parties were permitted to go outside the four corners of the deed and impeach the fifth unity required for a tenancy by the entirety. In all such cases, the fact that the parties were not married controlled, not the erroneous recitation of marriage.

At common law there were additional reasons why the fact of marriage and not the recitation of marriage was controlling. If the recitation of marriage had been required to create a tenancy by the entirety, it would have made the common-law rule of the unity of husband and wife optional. That is, if the marital status were recited, the husband and wife would

hold the property as tenants by the entirety even if no estate were mentioned. If they did not want to hold the property as tenants by the entirety, they would simply omit the recitation. The common-law rule, however, was an inherent part of marriage. It was not optional.

The absence of the requirement for the recitation of marital status prevented actions that at common law could be fraudulent. The common law sought to protect married women from the undue influence or coercion of their husbands. Blackstone observed that "the disabilities, which the wife lies under, are for the most part intended for her protection and benefit." 1 Blackstone, *Commentaries* at 433. One such disability was the inability to convey her property to her husband without a privy examination. That is, she had to be examined privately, out of the presence of her husband. 1 Blackstone, *Commentaries* at 432; 2 Minor on Real Property § 1006. *Norman v. Cunningham*, 46 Va. (5 Gratt.) 63 (1848) illustrates the importance of the private examination of the wife. In this case, James Tutt obtained a warrant from Lord Fairfax, the proprietor of the Northern Neck, for about 400 acres of land in July, 1749. He took all the proper steps to obtain a patent for the land, but never applied for the patent itself. He died in 1789 and devised his interest to his daughter and to his granddaughter, Milly. Shortly after Tutt's death, Thomas Norman married Milly. He later purchased Tutt's daughter's interest. At that point Milly, now Thomas Norman's wife, held a one-half interest and Norman held the other one-half interest as tenants in common.[13] He obtained a patent from the Commonwealth of Virginia, Lord Fair-fax's successor. The patent was issued in his and his wife's names as tenants by the entirety. Milly died in 1805. Norman remarried. He died in 1838. He had children by both wives. Norman's children by Milly, his first wife, sued his widow and his children by his second wife. They asserted that the patent to Norman and Milly as tenants by the entirety was invalid. They argued that the patent should have been issued in the same tenancy as Norman and Milly held the property before the issuance of the patent, that is, as tenants in common. If the property had been held as tenants in common, they would have inherited a one-half interest upon Milly's death, subject to their father's curtesy rights which had expired upon his death. They now sought to recover their mother's half interest for themselves. The Virginia Supreme Court noted that, "There seems no reason to doubt that the husband, in obtaining the patent to himself and wife jointly for the whole tract, acted in perfect good faith, and without any design to secure an undue advantage to himself." *Id.* at 63. Nonetheless, even though there were circumstances where the tenancy by the entirety would have been beneficial to Milly, there were also circumstances where it could be disadvantageous. There had been no privy examination. *Id.* at 65. The Court held that the deed created a tenancy in common, not a tenancy by the entirety. "I cannot think we are at liberty, for the sake of sustaining a fair transaction, to break in upon the safeguards which the law throws around femes covert in regard to the alienation of their inheritance. It would be a dangerous precedent, and might lead to fraudulent

---

**13.** It was not a tenancy by the entirety estate. The conveyances were not made to both of them at the same time by the same conveyance while they were married to each other. Milly inherited her interest before the marriage. Thomas Norman bought his interest after the marriage. As a result, there was no unity of title, time or marriage.

practices incapable of detection." *Id.*[14] *See* 2 Minor on Real Property, § 1010 n. 8. *Cf. Griffin v. Birkhead,* 84 Va. 612, 5 S.E. 685 (1888); *Shepperson v. Shepperson,* 43 Va. (2 Gratt.) 501 (1846).[15]

The fundamental rule of law relating to marriage—that husband and wife are one—is the foundation of the tenancy by the entirety estate. The estate was created by the fact of marriage, not by the recitation of marriage. The erroneous recitation of marital status does not create a tenancy by the entirety in an unmarried couple or deprive the surviving spouse of his or her dower or curtesy rights. Requiring such a recitation would have invited mischief at a time when married women were specially protected by legal disabilities and procedures, disabilities and procedures that would have been easily circumvented if the recitation of marriage had been required in addition to the fact of marriage. Courts have, without comment, looked beyond the four corners of deeds when a recitation of marriage was in fact erroneous. The common-law rule was that a conveyance to husband and wife without a recitation of marital status created a tenancy by the entirety estate. Only the fact, not the recitation, of marriage was necessary.[16] *Bennett v. Hutchens,* 133 Tenn. 65, 179 S.W. 629, 630 (1915). ("It is immaterial that the deed ... did not on its face name the parties as husband and wife ... The estate, by the entireties, upon the

execution of the deed, depended on the unity of the husband and wife, under the common law.")

### B. Statutory Modifications to Common Law

### 1. The Common Law of Partition and Survivorship

The common-law rule remains in force today. Other aspects of the common-law tenancy by the entirety estate have been altered by the Virginia General Assembly by statute. Virginia case law addresses the effect of these statutory changes on tenancies by the entirety estates. To better understand the case law, it is important to examine these statutory changes.

 At common law, survivorship was an inherent attribute of joint tenancies and tenancies by the entirety. Survivorship existed without any mention in the deed of conveyance. Another common-law attribute of joint tenancies and tenancies by the entirety was that they could not be partitioned. To be more precise, tenancies by the entirety could be neither voluntarily nor involuntarily partitioned. Neither husband nor wife could compel partition and they could not consent to partition. Partition would violate the principle of the unity of the husband and wife. Joint tenancies were slightly different. "By common law all the joint-tenants might agree to make partition of the lands, but one of

---

14. The opinion is unclear as to whether any marital status was recited in the patent which actually issued. It was, however, granted jointly. The patent, which the Court found to have been improper, "vested jointly in them, not as joint tenants, nor as tenants in common; but, according to the rule governing conveyances to husband and wife after coverture, each took the entirety, with the chance of excluding by survivorship the heirs of the other. *Thornton v. Thornton,* 24 Va. 179, 3 Rand. 179." *Norman v. Cunningham,* 46 Va. (5 Gratt.) at 63.

15. The privy examination was abolished by Va.Code (1887) § 2502 effective May 1, 1888. Va.Code (1887) was recodified as Va.Code (1919) § 5211 and later as Va.Code (1950) § 55–41. *See* Va.Code Ann. (1919) for cases decided under the statute prior to May 1, 1888. *See also* 2 Minor on Real Property § 1008.

16. Of course, the other four unities were also necessary.

them could not compel the others so to do: for, this being an estate originally created by the act and agreement of the parties, the law would not permit any one or more of them to destroy the united possession without a similar universal consent." 2 Blackstone, *Commentaries* at 185.[17]

### 2. Virginia Statutory Changes to Partition and Survivorship

Virginia altered both rules in a single statute in 1787.[18] The statute provided: That all joint tenants, or tenants in common, who now are, or hereafter shall be, of any estates of inheritance in their own rights, or in the right of their wives, and all joint tenants, or tenants in common, who now hold or hereafter shall hold, jointly, or in common, for term of life or years, with others who have, or shall have estates of inheritance, or freehold in any lands, tenements, or hereditaments, may be compelled to make partition between them, of such lands, tenements, and hereditaments, as they now hold, or hereafter shall hold, as joint tenants, or tenants in common ... If partition be not made between joint-tenants, whether they be such as might have been compelled to make partition or not, or of whatever kind the estates or thing holden or possessed be, the parts of those who die first, shall not accrue to the survivors; but shall descend or pass by devise, and shall be subject to debts, charges, curtesy or dower, or transmissible to executors or administrators, and be considered to every other intent and purpose, in the same manner as if such deceased joint-tenants had been tenants in common.

12 Hen. Stat. at Large c. 60 at 349–50.

The 1787 statute referred to "joint tenants." It did not refer to tenants by the entirety. The question naturally arose whether the statute included tenants by the entirety in the term "joint tenant."[19] The Virginia Supreme Court answered the question in 1825 in *Thornton v. Thornton*, 24 Va. (3 Rand.) 179 (1825). It held that tenants by the entirety were not included in the term "joint tenants." In *Thornton*, the testator left his residuary estate to Francis and Jane Thornton.[20] Jane died and their infant children sued by their next friend for their mother's moiety. *Id.* at 179–180. All agreed that the devise to Francis and Jane was a tenancy by the entirety. However, if tenancies by the entirety were included in the statute, Francis and Jane would have been tenants in common because the statute would have converted the tenancy by the entirety into a tenancy in common.[21] If tenancies by the entirety were not within the statute,

---

**17.** Blackstone notes that the common law with respect to joint tenancy was modified by 31 Hen. VIII c. 1 and 32 Hen. VIII c. 32. These statutes permitted joint tenants to compel partition.

**18.** Passed on November 28, 1786; effective on July 1, 1787.

**19.** Tucker asked the question in 1803 when he discussed Blackstone's posthumous statement. *See* 2 *Tucker's Commentaries* at 182 n. 3.

**20.** The operative language in the will was, "I give, devise and bequeath to my brother-in-law Francis and my sister Jane Thornton all the rest and residue of my estate..." *Thornton v. Thornton*, 24 Va. (3 Rand.) at 179–180. There was no mention of survivorship in the will. Nor was the mention of survivorship relevant. Unlike the present statute, Va.Code (1950) § 55–20, there was no savings provision that permitted survivorship if the parties wanted it. Survivorship was entirely eliminated as to the estates encompassed within the statute.

**21.** There was no savings provision as in the current law, Va.Code (1950) § 55–20, until 1849.

Francis and Jane would have remained tenants by the entirety, Francis would have become vested with sole ownership by survivorship on Jane's death and their children would inherit nothing upon Jane's death. The Supreme Court stated the question before it:

> The only question raised in the argument, was this;—when real estate is given to husband and wife, and their heirs, are they joint-tenants, and within the operation of our act of Assembly, which abolishes the right of survivorship?

*Id.* at 182. The Supreme Court reaffirmed the common-law rule that all conveyances to husband and wife were automatically tenancies by the entirety. "[I]t has been settled for ages, that when the devise is to husband and wife, they take by entireties and not by moieties." *Id.* at 185 (quoting *Doe v. Parratt*, 5 T.Rep. 652). "This reason was, that husband and wife are one in law, and there are no moieties between them." *Id.* at 184. Did the 1787 act include tenancies by the entirety? The Court stated:

> Does this section comprehend the case of husband and wife? I answer no; first, because the law applies to none but *joint-tenants*, which I have shewn that husband and wife are not; secondly, it is said, "the parts of those who die first shall not *accrue* to the survivors;" shewing that the law contemplated those only, who had *parts* or *moieties;* and all the cases shew, that between husband and wife, there are no *parts* or *moieties*

*Id.* at 186. The decision was based on the fact that a tenancy by the entirety was an individual, not a joint estate, and that the predecessor English statutes, 31 Hen. VIII c. 1 (1539) and 32 Hen. VIII c. 32 (1540), had never been interpreted to encompass tenancies by the entirety. *Id.* Tenancies by the entirety were held not to be within the 1787 statute.

The next significant statutory change was in 1849 when the General Assembly made the statute applicable to tenancies by the entirety.[22] The partition statute became Chapter 126, § 1.[23] The survivorship statute was amended and rewritten. It stated:

> § 18. When any joint tenant shall die, whether the estate be real or personal, or whether partition could have been compelled or not, his part shall descend to his heirs, or pass by devise, or go to his personal representative, subject to debts, curtesy, dower or distribution, as if he had been a tenant in common. And if hereafter an estate of inheritance be conveyed or devised to a husband and his wife, one moiety of such estate shall, on the death of either, descend to his or her heirs, subject to debts, curtesy or dower, as the case may be.
>
> § 19. The preceding section shall not apply to any estate which joint tenants have as executors or trustees, nor to an estate conveyed or devised to persons in their own right, when it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others. Neither shall it affect the mode of pro-

---

**22.** The Revised Code of 1819 separated the right to partition from the abolition of survivorship without any other change. In the text set out above, the partition portion (the text before the ellipsis) became § 1 and the survivorship portion (the text after the ellipsis) became § 2, both of c. 98. Va.Code (1819) c. 98, §§ 1, 2.

**23.** It was rewritten in relevant portion as follows: "Tenants in common, joint tenants, and coparceners, shall be compellable to make partition." The balance related to jurisdiction of the court to hear the partition suit. Va.Code (1849), c. 124, § 1.

ceeding on any joint judgment or decree in favour of, or on any contract with, two or more, one of whom dies.

Va.Code (1849), c. 116, §§ 18, 19. Section 19 was new as was the last sentence of Section 18.

 The Virginia Code of 1919 renumbered the provisions. The partition statute, Va.Code (1849) c. 126 § 1 *et seq.* became Va.Code (1919) § 5279 *et seq.*, Va. Code (1950) § 8–690 and later Va.Code (1950) § 8.01–81 *et seq.*, where it is codified today. It has never permitted involuntary partitions of tenancies by the entirety. Thus, they remain immune from claims of the individual creditors of either the husband or the wife, but not the joint claims of both of them. The survivorship statute Va.Code (1849), c. 116, §§ 18 and 19, became Va.Code (1919) §§ 5159 and 5160, and later Va.Code (1950) §§ 55–20 and 55–21 where it remains, with some later changes, codified today.[24]

The manner in which the General Assembly amended the 1787 act in 1849 is instructive. It did not use the words "tenancy by the entirety." It used the description, "an estate of inheritance ... conveyed or devised to a husband and his wife." Va.Code (1849) c. 116, § 18. This phrase follows the common-law rule that every conveyance to a husband and wife is a tenancy by the entirety, the only estate not included in the 1787 statute. *Thornton v. Thornton.* The conveyance does not have to be denominated as a tenancy by the entirety nor does the statute require that marital status be recited in the deed or will. It merely requires a conveyance to "a husband and his wife," a matter of fact, not a matter of recitation. This is in clear distinction to the requirement that the intention to retain the right of survivorship "manifestly appears from the tenor of the instrument." Va.Code (1950) § 55–21.

### 3. Property Rights of Married Women Act

The common law of married women's property rights was substantially changed in Virginia in 1877 when the Virginia Property Rights of Married Women Act became law. The principal effect of the Act as to real property acquired on or after April 4, 1877, was to vest in married women the "right to acquire, hold, use, control and dispose of property as if she were unmarried.... Her husband's marital rights shall not entitle him to the posses-

---

**24.** In 2001, the General Assembly revisited the issue when it enacted Va.Code (1950) § 55–20.2.2001 Acts c. 718. While the first two sentences of Va.Code (1950) § 55–20.2(A)codify and clarify several extensions of the common-law rule, the third sentence relaxes the requirement that survivorship appear manifest "from the tenor of the instrument." Now, "[a]n intent that the part of one dying should belong to the other shall be manifest from a designation of a husband and wife as 'tenants by the entireties' or 'tenants by the entirety.'" Va.Code (1950) § 55–20.2(A). The third sentence of § 55–20.2(A)comes close to the same result that the repeal of the last sentence of § 55–20 and the continued application of *Thornton v. Thornton* would have reached. There is, however, at least one difference: Section 55–20.2(A) does not apply to conveyances as in this case that are to husband and wife as joint tenants with the common-law right of survivorship. They are tenancies by the entirety because of the unity of the husband and wife. *Burroughs v. Gorman,* 166 Va. 58, 184 S.E. 174 (1936); *Allen v. Parkey,* 154 Va. at 744, 149 S.E. at 617. However, different results may arise from the absence of the use of the term "with the common-law right of survivorship." The use of the words "tenants by the entirety" or "joint tenants with the common-law right of survivorship" will result in the traditional, common-law tenancy by the entirety estate with the full common-law right of survivorship. However, the words "joint tenants" alone when used to convey property to a husband and wife will result in a tenancy in common. Va.Code (1950) §§ 55–20 and –21.

sion or use, or to the rents, issues and profits, of such real estate during the coverture; nor shall the property of the wife be subject to the debts or liabilities of the husband." Va.Code (1950) § 55–35. All states have now enacted similar laws, however, the statutes and their effects are not uniform. One question that arose under married women's property rights acts was whether the tenancy by the entirety estate was abolished. While some states have held that their married women's property rights act abolished the tenancy by the entirety estate, most have not.[25] Annotation, *Married Women's Act as Abolishing Estates by Entireties*, 141 A.L.R. 179 (1942). Other states have found that their married women's property rights acts altered the common law with respect to tenancy by the entirety estates in other ways. Pennsylvania is such an example.

Pennsylvania adopted the common-law tenancy by the entirety. In *Stuckey v. Keefe's Executors*, 26 Pa. 397, 1856 WL 7101 the court was faced with a deed to William Blair and Rebecca, his wife, "as tenants in common, and not as joint tenants." *Id.* *2. William died in 1830 survived by Rebecca. Rebecca conveyed the entire property in 1844. The plaintiff claimed title through William's heirs. The defendants claimed title through Rebecca's conveyance. If William and Rebecca owned the property as tenants by the entirety, she would have succeeded to ownership of the entire property on William's death and the defendants would prevail. If William and Rebecca owned the property as tenants in common, she would not have owned William's half interest and the plaintiff would have prevailed as to it. The Pennsylvania Supreme Court held

that William and Rebecca owned the property as tenants by the entirety notwithstanding the stated intention to own the property as tenants in common. It relied on the unity of the husband and wife at common law:

> A conveyance to husband and wife creates neither a tenancy in common nor a joint tenancy. The estate of joint tenants is a unit made up of *divisible parts*; that of husband and wife is also a unit; but it is made up of *indivisible parts*. In the first case there are several holders of different moieties or portions, and upon the death of either, the survivor takes a new estate. He acquires by survivorship the moiety of his deceased co-tenant. In the last case, although there are two *natural* persons, they are but one person in *law*, and upon the death of either, the survivor takes no new estate. It is a mere change in the properties of the legal person holding, and not an alteration in the estate holden.

*Id.* (Italics in original). It further rejected the argument that a tenancy by the entirety estate was merely presumed and could be altered by clear language to the contrary:

> If the doctrine to which we refer is not a mere rule for ascertaining the meaning of words, but a rule of law founded on the rights and incapacities of the matrimonial union, it must be obvious that the *intention* of the parties to the conveyance is entirely immaterial. If husband and wife *cannot take* a conveyance by moieties, if they are absolutely *incapable of receiving such a grant*, it is clear that no words in the conveyance to

---

**25.** "The effect of the Married Women's Acts on tenancies by entirety has given some difficulty. In some states, as in West Virginia, the effect is to abolish tenancies by entireties. In a majority of the cases it is held that tenancies by entireties are not abolished by the Married Women's Acts, although the Acts usually enable the wife to enjoy her interest during coverture." 2 Minor on Real Property, § 855 n. 5 (citations omitted).

them, however clearly expressed, can give them that capacity.

*Id.* at *3. (Italics in original). After the passage of the Pennsylvania Married Women's Property Act, the matter was addressed in light of the Act. In *Blease v. Anderson,* 241 Pa. 198, 88 A. 365 (1913), the Pennsylvania Supreme Court was again faced with a deed to a married couple that purported to convey property to them as tenants in common. *Id.* at 201–202, 88 A. at 365. It held that the Married Women's Property Act did effect a change in the common law: A conveyance to a husband and wife only presumptively created a tenancy by the entirety, a presumption that could be overcome.

The modified common-law principle was applied by the Pennsylvania Supreme Court in *Heatter v. Lucas,* 367 Pa. 296, 80 A.2d 749 (1951), a case strikingly similar to the one before this court. In *Heatter,* the grantees of the deed in question were "Francis Lucas, a single man, and Joseph Lucas and Matilda Lucas, his wife." *Id.* at 297, 80 A.2d at 750. Upon Joseph's death a creditor asserted that Joseph owned a one-third interest that was available to pay his creditors. Matilda asserted that she and Joseph owned a half-interest as tenants by the entirety and that their son, Francis, owned the other half-interest. The court agreed that at common law, Matilda was correct. "At the common law and under early Pennsylvania law a conveyance to husband and wife under circumstances involving unity of time, title, interest and possession created a tenancy by the entireties regardless of the intention of the parties. *Stuckey v. Keefe's Executors,* 1856, 26 Pa. 397." *Id.* at 299, 80 A.2d at 751. However, the Married Women's Property Act changed this unalterable result. The court citing *Blease v. Anderson,* said that "if there appear an intention to create an estate other than by the entireties such an intention would be

given effect." *Id.* In looking at the facts of the case, it found that the deed created a tenancy by the entirety in Joseph and Matilda, the same result as at common law.

The Virginia Supreme Court never interpreted the Virginia Property Rights of Married Women Act to abolish or modify the tenancy by the entirety estate. It continues to honor the common-law principle of the unity of the husband and wife. In 1911, the Virginia Supreme Court reaffirmed the common-law rule:

> At common law, when land was conveyed to a husband and wife, after marriage, not expressly to hold as tenants in common, they were said to be seised by entireties; but in consequence of their legal oneness neither could dispose of any part thereof without the assent of the other, but the whole upon the death of one remained to the survivor. 2 Min. Inst. (4th Ed.) 471, and authorities cited.

*American Nat. Bank of Washington, D.C. v. Taylor,* 112 Va. 1, 70 S.E. 534 (1911). *Allen v. Parkey,* decided in 1929, reaffirmed the common-law rule that all conveyances to husband and wife were tenancies by the entirety. Had the Virginia Property Rights of Married Women Act affected the basis for tenancies by the entirety, the unity of husband and wife, both cases would have been decided differently.

*Vasilion v. Vasilion,* a 1951 decision of the Virginia Supreme Court, discussed married women's property rights acts. The Supreme Court was clearly aware of the argument that other states had interpreted their acts to abolish the tenancy by the entirety estates. This case was a direct challenge to tenancy by the entirety estates, the creditor arguing that they no longer existed in Virginia. While the creditor's principal argument rested on § 55–20 and § 55–21, the Supreme Court ac-

knowledged the impact of married women's property rights acts but held that the tenancy by the entirety estate continued to exist in Virginia. The Virginia Property Rights of Married Women Act while fundamentally changing the common law with respect to the property rights of married women had no effect on the development of the law in Virginia with respect to tenancy by the entirety estates. Emerson Spies, *Some Considerations in Conveying to Husband and Wife,* 34 Va.L.Rev. 480 (1948).[26]

### C. Later Case Law Development

The tenancy by the entirety estate retains its full vitality in Virginia. Its foundation remains the common-law principle of the unity of the husband and wife. Its continued vitality is shown by several later cases. The first to be considered is *Allen v. Parkey,* 154 Va. 739, 149 S.E. 615 (1929) *reh. den.* 154 Va. 739, 154 S.E. 919 (1930). In *Allen v. Parkey,* the Virginia Supreme Court was presented with a deed conveying real property to W.P. Allen and Mary Ely Allen. No estate was stated in the deed and the only mention of survivorship was the following: "Now should the said W.P. Allen survive his wife, Mary Ely Allen, the said tract of land to be his property to dispose of as he sees proper and the same applies to the said Mary Ely Allen, his wife." *Id.* at 742–43, 149 S.E. at 617.

W.P. Allen made an assignment for the benefit of his creditors to Parkey. Parkey asserted that Allen held an interest in the property as a tenant in common with his wife and sought to partition the property.

Mrs. Allen asserted that she and her husband owned the property as tenants by the entirety. Consequently, Mr. Allen's interest was not included within the assignment to Parkey and, in any event, the property was not subject to partition. *Id.* at 744, 149 S.E. at 617. Parkey's argument rested on the application of three statutes, Va.Code (1919) §§ 5159, 5160 and 5279 (now Va.Code (1950) §§ 55–20, 55–21 and 8.01–81, respectively). Section 5279 provided that "[t]enants in common, joint tenants, and co-parceners shall be compellable to make partition." Section 5159 provided that "if hereafter any estate, real or personal, be conveyed or devised to a husband and his wife, they shall take and hold the same by moieties, in like manner as if a distinct moiety had been given to each by a separate conveyance." Section 5160 provided that Section 5159 did not apply if "it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others." Parkey argued that the survivorship intent was not manifest as required by § 5160.[27] It would then follow by virtue of § 5159 that the tenancy by the entirety estate was converted into a tenancy in common. The tenancy in common could be partitioned under § 5279.

The critical question was whether the language of the deed to W.P. Allen and Mary Ely Allen manifested the intention to retain survivorship. The Supreme Court held that the intention required by § 5159 was "manifest by the deed in judgment. The interest of Mr. Allen and of his wife cannot be partitioned. The right of surviv-

---

**26.** "In 1877 the Married Women's Property Act was enacted which served to modify substantially the marital rights of the husband, but which has not in any way affected the tenancy by the entirety existing between husband and wife." Spies, *Some Considerations*

*in Conveying to Husband and Wife,* 34 Va. L.Rev. at 485.

**27.** This was not an issue in 1825 when *Thornton v. Thornton* was decided. Until the 1849 amendment, there was no savings provision even if survivorship was manifest.

orship exists and this interest is at this time beyond the reach of his creditors." *Id.* at 746, 149 S.E. at 618.

The case has more significance than this. The Court's determination that survivorship was manifest would have been irrelevant if Mr. and Mrs. Allen held the property as joint tenants, with or without the right of survivorship. All joint tenancies are subject to partition. Va.Code (1919) § 5279. While the survivorship statute was amended in 1849 to apply to tenancies by the entirety, the partition statute has never been amended to apply to tenancies by the entirety. It is only a tenancy by the entirety that is not subject to partition. *Thornton v. Thornton.* What is assumed in *Allen v. Parkey* and discussed in passing is that Mr. and Mrs. Allen owned the property as tenants by the entirety with the common-law right of survivorship and not as joint tenants with the common-law right of survivorship. Consequently, whether W.P. Allen and Mary Ely Allen held the real property as joint tenants with or without the common-law right of survivorship or as tenants by the entirety with the common-law right of survivorship was critical to the outcome of the case. By holding that the Allen's property was not subject to partition, the Virginia Supreme Court necessarily held that they owned the property as tenants by the entirety notwithstanding the absence of the identification of the estate they acquired. *Burroughs v. Gorman,* 166 Va. 58, 184 S.E. 174 (1936) went even further. Even if the estate is identified as a joint tenancy with the common-law right of survivorship, it is in fact a tenancy by the entirety with the common-law right of survivorship.

The manner in which the General Assembly amended the survivorship statute in 1849 and carried it through to today raises a philosophical question. Does Va. Code (1950) § 55–20 (previously Va.Code (1849), c. 116, § 18) destroy the tenancy by the entirety and Va.Code (1950) § 55–21 (previously Va.Code (1849), c. 116, § 19) merely permit survivorship to become an added attribute of the resulting estate if survivorship is made manifest? Or, does § 55–21 prevent the application of § 55–20, thereby leaving the tenancy by the entirety intact? There would be no difference in the case of a joint tenancy. If § 55–20 destroyed the joint tenancy, § 55–21 would create survivorship in the resulting estate. It would be a difference without a distinction. But, if a tenancy by the entirety were destroyed by § 55–20 and § 55–21 merely created survivorship in the resulting estate, the resulting estate might be characterized more properly as a joint tenancy with the attendant rights of joint tenants. The husband and wife might no longer be required to act together to convey or to encumber the property. The property might be subject to partition. A creditor of either one of them might be able to reach that spouse's interest.[28]

**28.** The distinction is better made by Chief Justice Lewis of the Supreme Court of Pennsylvania:

A conveyance to husband and wife creates neither a tenancy in common nor a joint tenancy. The estate of joint tenants is a unit made up of *divisible parts;* that of husband and wife is also a unit; but it is made up of *indivisible parts.* In the first case there are several holders of different moieties or portions, and upon the death of either, the survivor takes a new estate. He acquires by survivorship the moiety of his deceased co-tenant. In the last case, although there are two *natural* persons, they are but one person in *law,* and upon the death of either, the survivor takes no new estate. It is a mere change in the properties of the legal person holding, and not an alteration in the estate holden. The loss of an adjunct merely reduces the *legal* personage holding the estate to an individuality identical with the *natural* person. The whole estate continues in the survivor the

The creditor in *Vasilion v. Vasilion* raised just that issue. His argument was breathtaking in its breadth. He argued that "section 55–20, notwithstanding the exceptions contained in section 55–21, is to abolish tenancies by the entireties in Virginia." *Vasilion*, 192 Va. at 744, 66 S.E.2d at 604. The facts were straight forward. On June 25, 1946, Lionel Travis Woodard conveyed real property to George Vasilion and Anne A. Vasilion, husband and wife, as tenants by the entirety with the common-law right of survivorship. In May, 1949, Ernest Vasilion, George's father, loaned George $3,000. On August 17, 1949, George and Anne conveyed the real property to Anne, individually. In November 1949, Ernest obtained a judgment against George. In February 1950, Ernest filed a fraudulent conveyance suit to avoid the August 17, 1949, conveyance from George and Anne to Anne individually. Anne's demurrer was sustained and Ernest appealed.

Anne's demurrer argued that as a matter of law there was no fraudulent conveyance because the property was never available to individual creditors in the first place. It was held by her husband and her as tenants by the entirety with the common-law right of survivorship. At common law, tenants by the entirety property is subject only to the joint debts. Since her husband's individual creditors could not reach it when it was held as

---

same as it would continue in a corporation after the death of one of the corporators: 1 Dana 244, 7 Yerger 319. This has been the settled law for centuries. The distinction may seem a nice one, but it is founded upon the nature of marriage and the rights and incapacities which it establishes. *Stuckey v. Keefe's Executor*, 26 Pa. 397, 1856 WL 7101 at *2.

Focusing on the moieties explains the language of Va.Code (1950) § 55–20:

And if hereafter any estate, real or personal, is conveyed or devised to a husband and his wife, they shall take and hold the same by moieties in like manner as if a distinct moiety had been given to each by a separate conveyance.

In a tenancy by the entirety there are no moieties. The husband and wife own the entirety. In order for property to be partitioned or for the husband's interest to pass to his heirs and the wife's interest to her heirs, there must be two moieties. Va.Code § 55–20 creates separate moieties in each spouse at the inception of the estate, the time of the conveyance, unless the provisions of Va.Code (1950) § 55–21 are applicable, that is, the intention to create survivorship is manifest in the instrument. If Va.Code (1950) § 55–21 is applicable, Va.Code (1950) § 55–20 does not come into play, separate moieties are not created and the husband and wife own the entirety.

Chief Justice Lewis' hypothetical of the corporate shareholders is apt. Assuming that no fractional shares are permitted, if there are two shareholders who together own one share of stock with the right of survivorship, upon the death of the first shareholder, the second shareholder succeeds to sole ownership of the one share of stock. If, however, each shareholder owns his own share of stock but there is a shareholder's agreement that the survivor will inherit the share of the first to die, upon the death of the first shareholder, the second shareholder will own two shares of stock. This subtle distinction is the source of the differences between tenancies by the entirety and joint tenancies at common law. In the corporate hypothetical, if there is a third shareholder, it matters whether the two shareholders own a single share with the right of survivorship or two shares subject to a shareholder's agreement. In the first case, they own half the company; in the second, two-thirds between them. At common law, if A, B and C were the owners of a parcel of real property, and A and B were husband and wife, a common-law tenancy by the entirety was created between them and they, like the shareholders in first corporate hypothetical, owned half of the real property. C owned the other half either as a tenant in common or a joint tenant with the entirety estate. If A, B and C were unrelated, a common-law joint tenancy or tenancy in common between the three was created and they, like the shareholders in the second corporate hypothetical, each owned a third of the real property.

tenants by the entirety, they were not disadvantaged by the conveyance to Anne alone. This was evident from the fact that if the deed of conveyance was voided, title would re-vest from her individually to her husband and her as tenants by the entirety. Her husband's creditor might have avoided the August 17, 1949 deed, but would have been unable to partition the property to satisfy his individual debt. It would be at most a Pyrrhic victory.[29]

What then did the creditor seek to accomplish? What was his theory of the case? He argued that George and Anne did not own the property as tenants by the entirety. His theory of the case was that Va.Code (1950) § 55–20 abolished the tenancy by the entirety estate in Virginia. Consequently, George and Anne obtained title from Woodard as joint tenants with the common-law right of survivorship, not as tenants by the entirety. Joint tenancies are partitionable. Va.Code (1950) § 8.01–81. Since the property was partitionable, the conveyance of George's interest to Anne was fraudulent. He sought to avoid the transfer, impress his judgment lien on George's one-half interest and then commence a creditor's suit to recover his judgment from George's one-half interest.

This was not such a far-fetched theory. It had prevailed in West Virginia based in part on the 1849 amendment to the Virginia Code, Va.Code (1849) c. 116, § 18, extending the abolition of survivorship to tenants by the entirety estates. *McNeeley v. South Penn Oil Co.*, 52 W.Va. 616, 628, 44 S.E. 508, 512 (1903); *Wartenburg v. Wartenburg*, 143 W.Va. 141, 100 S.E.2d 562 (1957) (tenants by entirety property subject to partition by wife). The application of married women's property rights acts in other states reached the result that

tenants by the entirety estates in those states had been abolished. Annotation, *Married Women's Act as Abolishing Estates by Entireties*, 141 A.L.R. 179 (1942). The creditor's legal theory showed an appreciation of the common-law roots of the tenancy by the entirety estate in the legal fiction that a husband and wife were one and acquired the entirety of the property and not two separate moieties. The legal fiction, the creditor argued, had been destroyed by the Property Rights of Married Women Act or Va.Code (1950) § 55–20 the latter which provided that:

> if hereafter any estate, real or personal, is conveyed or devised to a husband and wife, they shall take and hold the same by moieties in like manner as if a distinct moiety had been given to each by a separate conveyance.

If Va.Code (1950) § 55–20 created two separate moieties, Va Code (1950) § 55–21 could not destroy the moieties or metaphysically merge them into an entirety, it could only create survivorship between husband's and wife's separate moieties, just as two unrelated joint tenants who also owned property by moieties. The creditor further argued that if there were still a tenancy by the entirety estate, there would be no need to recite survivorship because that was a necessary element of a tenancy by the entirety. Thus, the use of the survivorship language recognized the abolition of the tenancy by the entirety estate itself.

The Virginia Supreme Court turned back the challenge. It started, as did the creditor, from the common-law doctrine of the unity of husband and wife. As a result of the doctrine, husband and wife took an individual estate that vested in the survivor, not a joint estate. This was true even

---

**29.** In bankruptcy the result may not be the same. *See In re Smoot*, 265 B.R. 128 (Bankr. E.D.Va.1999), *aff'd Tavenner v. Smoot (In re Smoot)*, 257 F.3d 401 (4th Cir.2001). Moreover, there may be a separate bankruptcy impact under 11 U.S.C. § 727(a)(2).

though the deed did not express how they were to take title. *See Allen v. Parkey.* The court noted that under the common law, "the same words of conveyance which would make other grantees joint tenants will make a husband and wife tenants by the entireties." *Vasilion,* 192 Va. at 739, 66 S.E.2d at 602. It then recited the consequences of the unity. Neither spouse can sever the estate by his or her sole act. Neither can convey or dispose of his or her interest. Upon death, the whole estate "remains" in the survivor. *Id.* at 740, 66 S.E.2d at 602. The property is subject to the joint creditors of the spouses, but is immune from the individual debts of one spouse. *Id.* The Supreme Court then reviewed the history of tenancies by the entirety in Virginia, quoting a portion of Professor Spies article, *Some Considerations in Conveying to Husband and Wife,* 34 Va.L.Rev. 480 (1948). Finally, it considered the impact of the Property Rights of Married Women Act of 1877. Va.Code (1950) § 55–35 *et. seq.* It concluded that neither § 55–20 nor the Property Rights of Married Women Act abolished the common-law estate of tenancy by the entirety.

*Vasilion v. Vasilion* thus put to rest any argument that the tenancy by the entirety estate had been abolished in Virginia and firmly reaffirmed the common law with respect to the estate. The Court stated:

Appellant concedes, "at common law when land was conveyed to a man and wife the seisin of each was an entirety or in one person because from the unity of their person by marriage they have land entirely as one individual and it follows that on the death of either husband or wife survivorship takes place between tenants by entireties", citing Graves, Real Property, section 151, page 180.

This is so, even though the deed, will or other instrument does not express

how they are to take. *Hunt v. Blackburn,* 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488; *Simons v. Bollinger,* 154 Ind. 83, 56 N.E. 23, 48 L.R.A. 234; 26 Am.Jur., Husband and Wife, § 68.

Under the common law the same words of conveyance which would make other grantees joint tenants will make a husband and wife tenants by the entireties. *Hunt v. Blackburn, supra.* Clearly, the deed in this case created in George Vasilion and Anne A. Vasilion an estate by the entireties. Section 55–21, Code, 1950; *Allen v. Parkey,* 154 Va. 739, 149 S.E. 615; 154 Va. 739, 154 S.E. 919.

*Vasilion,* 192 Va. at 739–40, 66 S.E.2d at 601–602.

 The most recent Virginia Supreme Court case is *Jones v. Conwell,* 227 Va. 176, 314 S.E.2d 61(1984). In this case, the deed conveyed real property to four individuals as joint tenants with the common-law right of survivorship. Arthur E. Jones obtained a judgment against one of the four individuals, Sam Conwell, and sought to enforce his lien by partitioning the property and forcing a judicial sale under Va. Code § 8.01–81. The deed was attached to the bill of complaint. It did not recite the marital status of any of the four grantees. There was no allegation of marital status in the bill of complaint. Conwell demurred, asserting that he was married to one of the other owners, that the judgment lien did not attach to their interest and that their interest could not be partitioned. *Id.* at 178, 314 S.E.2d at 62. *See* Record on Appeal, Appendix at 1–2, 7. A demurrer accepts all well-pled facts as true. Based on such facts, the demurrer tests the legal sufficiency of the bill of complaint. The problem with Conwell's demurrer was that his marital status was not pled in the bill of complaint and was not recited in the deed. The trial court could not reach the

issue of whether Conwell held his interest as a tenant by the entirety without knowing his marital status. Conwell could include it in his answer and use it as a defense on the merits, but the bill of complaint was not subject to demurrer on this basis. The court sustained the demurrer on different grounds, that Va.Code (1950) § 8.01–81, the partition statute, did not include joint tenancies with the right of survivorship, only joint tenancies. Jones appealed.

The Supreme Court began its opinion with this statement:

> This appeal presents an issue of first impression in the Commonwealth: whether a joint tenancy with right of survivorship, as at common law, is subject to partition by a judgment lien creditor of one of the several joint tenants.

*Jones v. Conwell*, 227 Va. at 178, 314 S.E.2d at 62.

At first blush, the answer seems obvious. Joint tenancies have always been subject to partition. Va.Code (1950) § 8.01–81; 12 Hen. Stat. at Large c. 60 at 349–50; 31 Hen. VIII c. 1 (1539); 32 Hen. VIII c. 32 (1540).

Conwell's argument was more subtle and is rooted in the ancient common law. Common-law joint tenancies differ from modern joint tenancies. At common law, the right of survivorship was an inextricable part of the tenancy. No words were necessary in order to create or to preserve the right of survivorship. Also at common law, joint tenancies were not subject to compulsory partition. 2 Minor on Real Property, § 889. The common law has been changed with respect to these attributes by statute. The earliest statutes allowing partition were 31 Hen. VIII c. 1 (1539) and 32 Hen. VIII c. 32 (1540). 2 Minor on Real Property, § 889; Tiffany on Real Property, §§ 174–175.

The Virginia partition statute, Va.Code (1950) § 8.01–81, refers only to "joint tenants." It does not refer to joint tenants with the common-law right of survivorship. Just as in *Thornton* where the Supreme Court held that tenancies by the entirety were not encompassed within joint tenants in the 1787 predecessor to Va.Code (1950) § 55–20, Conwell argued that joint tenants with the common-law right of survivorship were not included within the term "joint tenants" as used in Va.Code (1950) § 8.01–81. The statute referred to the original, ancient "joint tenancies" and not to the modern "joint tenancies with the common-law right of survivorship." Under Va.Code (1950) § 55–20, a joint tenancy is converted to a tenancy in common. Only the application of Va.Code (1950) § 55–21 preserves the joint tenancy and that estate must be denominated as a "joint tenancy with the common-law right of survivorship" or other language that manifests the right of survivorship. Consequently, Conwell argued, the reference in Va.Code (1950) § 8.01–81 to joint tenants must be different from a "joint tenant with the common-law right of survivorship" and, the absence of the latter described estate in Va.Code (1950) § 8.01–81 meant that it was not subject to partition under Va.Code (1950) § 8.01–81. He held his estate in the modern form, not the ancient form used by the statute. The Supreme Court quickly dispatched this intricate and novel argument and preserved the well-accepted understanding that joint tenancies, with or without the common-law right of survivorship, are subject to partition under Va. Code (1950) § 8.01–81. *Jones v. Conwell*, 227 Va. at 183, 314 S.E.2d at 66.

*Jones v. Conwell* did not change the law. It merely turned back a clever statutory construction argument. It did not permit partition where none had been permitted before. It did not preclude partition were it had been previously permitted. It nei-

ther expanded nor contracted the joint tenancy or the tenancy by the entirety estates.[30] In the process, however, it reaffirmed *Allen v. Parkey* and the common-law principle of the unity of husband and wife. *Jones v. Conwell*, 227 Va. at 181, 314 S.E.2d at 64.

The cases discussed all concern the effect of statutory changes on the tenancy by the entirety estate. The statutory changes are the partition statute, now Va. Code (1950) § 8.01–81, the Property Rights of Married Women Act of 1877, now Va.Code (1950) § 55–35 *et seq.*, and the changes to survivorship, now Va.Code (1950) §§ 55–20 and 55–21. The Virginia Supreme Court often returned to the common-law foundations of the tenancy by the entirety estate to resolve the questions raised. It never modified those fundamentals and never altered the tenancy by the entirety estate except where expressly provided by statute. The sole change to the tenancy by the entirety estate is that survivorship must now be made manifest in the instrument that creates the estate. Without that manifestation, the tenancy by the entirety estate is converted into a ten-ancy in common.[31] What has not changed is the ancient common-law principle of the unity of the husband and wife. The application of this common-law rule is what distinguishes the tenancy by the entirety from the joint tenancy. It is this principle that creates a tenancy by the entirety in every conveyance to husband and wife, if the five unities are present and, since 1850, if the intent to retain survivorship is also manifest.

### D. *In re Zella and Wolfe v. Sprouse*

The debtor relies on *In re Zella* to support his claim of exemption in this case. *Zella* follows the well-established Virginia common law on tenancies by the entirety estates, concluding that the Virginia Supreme Court's holding in *Allen v. Parkey* that "a husband and wife taking jointly always take as tenants by the entirety" remains the law in Virginia. *In re Zella*, 202 B.R. at 714.

█ The trustee relies on *Wolfe v. Sprouse.* While not precedential in this court,[32] it should be discussed because of the central position it plays in the trustee's

---

**30.** The case is tantalizing. The Supreme Court remanded the case to the circuit court where the issue of whether Conwell owned his interest as a tenant by the entirety could have been considered on a merits determination. It was never addressed. On October 24, 1984, shortly after the case was remanded to the circuit court, Samuel and Evelyn Conwell, one of the other three joint owners, filed a joint petition in bankruptcy in this court, Case No. 84–1373–A. The trustee filed a no distribution report and the case was closed as a no asset case. The circuit court chancery suit was discontinued on June 23, 1988, after no order had been entered or proceeding taken place for more than two years. Va.Code (1950) § 8.01–335. The very issue before this court in this case was before the circuit court, but never decided.

**31.** This same rule applies equally to joint tenancies.

**32.** The district court opinion is not a decision from this judicial district and *In re Zella* is contrary district court precedent in this judicial district. *Wolfe v. Sprouse* was affirmed by the Court of Appeals for the Fourth Circuit, but its decision was unpublished. Unpublished opinions are not binding precedent in the Fourth Circuit. *See* Fourth Circuit Local Rule 36(c). None of the courts endeavored to reconcile *Wolfe v. Sprouse* and *Zella*, probably because the litigants in each case were unaware of the decision in the other case. *Wolfe v. Sprouse* was argued in the Court of Appeals on May 8, 1996, and decided in by unpublished opinion on June 28, 1996. *Zella* was decided by the bankruptcy court on May 30, 1996, and by the district court on September 25, 1996.

argument. The district court's result is correct. The Sprouses must have been married when the notes were executed and delivered and remained married continuously until the filing of the petition, a critical fact that was not established. *Wolfe v. Sprouse,* 183 B.R. at 742 n. 4. However, it would be disingenuous to relegate the district court's discussion to dicta based on a single footnote. The discussion, though, appears to depart from *Zella's* straight-forward analysis and the Virginia Supreme Court's interpretation of Va.Code (1950) §§ 55–20 and 21.

*Allen v. Parkey,* the foundation for *Zella,* and *Wolfe v. Sprouse* asked different questions. The district court asked whether the Sprouses intended to create tenancies by the entirety as argued by the debtor, or created joint tenancies as argued by the trustee. *Wolfe v. Sprouse,* 183 B.R. at 741. The Virginia Supreme Court asked a different question: whether the element of survivorship "manifestly appears from the tenor" of the deed, and in particular, from the last sentence of the deed,as required by Va.Code (1919) § 5160 (now Va.Code (1950) § 55–21). *Allen v. Parkey,* 154 Va. at 745, 149 S.E. at 618.

The Supreme Court followed the traditional two-step analysis in *Allen v. Parkey.* The first step was the recognition that the conveyance to a husband and wife itself created the tenancy by the entirety. The second step was to determine whether the deed of conveyance manifested survivorship. If it did not, the tenancy by the entirety was converted to a tenancy in common.

The Supreme Court started with the common-law proposition that all conveyances to a husband and wife create a tenancy by the entirety. It stated:

> The conveyance is after marriage to a man and wife jointly. The seisin is *per tout et non per mie,* and there is survivorship upon the death either of husband or wife and neither can dispose of any part of the estate without the consent of the other. *Hunt v. Blackburn,* 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488; Graves Notes on Real Property, section 161. Since there is no separate interest in either tenant, there can be no partition. Tiffany on Real Property, section 194.

*Id.* at 744, 149 S.E. at 617. The phrase *"per tout et non per mie"* is the traditional phrase describing a tenancy by the entirety while the phrase *"per my et per tout"* is the traditional phrase describing a joint tenancy. This was a complete and accurate statement of the common law. *See Gant v. Gant; American Nat. Bank v. Taylor; Thornton v. Thornton.*

The Supreme Court then recounted the statutory changes to the common law starting with the 1787 statute where the General Assembly abolished survivorship for joint tenancies, but not for tenancies by the entirety. Survivorship was later abolished for tenancies by the entirety with the enactment of Va.Code (1849) §§ 2430[33] and 2431, later re-codified as Va.Code (1919) §§ 5159 and 5160, and then as Va.Code (1950) §§ 55–20 and 55–21. The Court discussed the effect of the statutory changes:

> The effect of section 5159, when an estate is conveyed to a husband and wife, is to convert a tenancy by entirety into a tenancy in common, and of course to destroy survivorship. Minor on Real Property, section 911. But this is to be taken in connection with the exception specifically provided for in section 5160

---

[33]. The 1849 amendment applied only to estates of inheritance conveyed or devised to a husband and wife. It was expanded to any estate, real or personal, conveyed or devised to a husband and wife in 1887. Va.Code (1887) § 2430.

where it is said: 'The preceding section shall not apply to any estate which joint tenants have as executors or trustees, nor to an estate conveyed or devised to persons in their own right, when it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others.'

*Allen v. Parkey*, 154 Va. at 745–746, 149 S.E. at 618.

The question in *Allen v. Parkey* resolved to whether it "manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others." In short, was the intention to preserve the right of survivorship manifest from the language of the deed? The Supreme Court held that, "such intention is manifest by the deed in judgment. The interest of Mr. Allen and of his wife cannot be partitioned. The right of survivorship exists and this interest is at this time beyond the reach of his creditors." *Id.* at 746, 149 S.E. at 618.

The district court proceeded differently in *Wolfe v. Sprouse.* It sought to determine from the face of the notes what estate the noteholders intended to create. It treated the question as one of construction. If it could not determine the noteholders' intent, then they would hold the notes as tenants in common or as joint tenants, but not as tenants by the entirety.

The district court described the effect of Va.Code (1950) §§ 55–20 and 55–21:

The effect of these provisions is to abolish tenancies by the entirety (and joint tenancies) unless it is "manifest" from the wording of the conveyance that the grantor intends to establish a **tenancy by the entirety.** *Allen v. Parkey*, 154 Va. 739, 745, 149 S.E. 615, 618 (1929) (dictum).

*Wolfe v. Sprouse*, 183 B.R. at 741 (emphasis added). It could not find "that an intent to convey tenancies by the entirety is manifest from the language of the notes given that the notes lack even the hint of a marital relationship." *Id.* at 742.

There are two differences between *Allen v. Parkey* and *Wolfe v. Sprouse.* *Allen* found that all conveyances to husband and wife during marriage were tenancies by the entirety without regard to the intention of the spouses. *Wolfe* assumed that such conveyances were tenancies in common, the default tenancy, unless the deed or instrument creating the estate evinced an intent to create a tenancy by the entirety or a joint tenancy. The type of estate to be created was not identified in either *Thornton v. Thornton or Allen v. Parkey.* Nor was there any indication of an intent on the part of the spouses in either case. In both instances, all the parties agreed that the spouses held the property as tenants by the entirety without an examination of their intention.

The second difference is with respect to Va.Code (1950) § 55–21. *Allen* discusses the intent to preserve survivorship which is the only intention mentioned in Va.Code (1950) § 55–21. *Wolfe* discusses an intent to create a tenancy by the entirety. Va. Code (1950) § 55–21 does not refer to an intention to create a tenancy by the entirety, only that the consequence of the absence of an intention to preserve survivorship will convert a tenancy by the entirety or a joint tenancy to a tenancy in common. It is a savings provision for Va.Code (1950) § 55–20 which was intended to abolish survivorship, that is, joint tenancies and later tenancies by the entirety. *Allen* never discusses marital status as being a part of the intention required by it to be manifest. *Wolfe* focuses on martial status. One difference in the focus of the two cases is illustrated by the fact that a clear intent to create a tenancy by the entirety without a manifestation to retain survivorship is in-

sufficient to create a tenancy by the entirety. *In re Manicure*, 29 B.R. 248 (Bankr. W.D.Va.1983).[34]

*Wolfe v. Sprouse* addressed another argument raised by Sprouse, that the court could "fill in the gap" by considering the stipulation of the parties as to the Sprouse's martial status the day the case was commenced. The district court rejected this argument because "[i]n the absence of ambiguity, the court is limited to the four corners of an instrument in interpreting its meaning. *Wilson v. Holyfield,* 227 Va. 184, 313 S.E.2d 396 (1984)." *Wolfe v. Sprouse,* 183 B.R. at 742. While this is an accurate statement of the Virginia parole evidence rule, a recitation or absence of a recitation of marital status has never been held to create or to resolve an ambiguity as to the estate conveyed. The estate conveyed is a matter of law determined from the facts of the conveyance. A tenancy by the entirety estate was created by the common law if the five unities were present. The creation of the estate was not determined by the recitations or absence of recitations in the deed itself.

Other states have modified this rule in light of their own partition statutes, survivorship statutes and married women's property rights acts. Some have held that their statutes eliminated tenancies by the entirety estates and others that a husband and wife may hold property as tenants in common, joint tenants or tenants by the entirety depending on the language of the grant. Virginia has not altered the common law except to require the manifest intent to retain survivorship. That is the essential holding of *Allen v. Parkey.*

A careful reading of *Wolfe v. Sprouse* reveals differences between its analysis and the Virginia common law of tenancies by the entirety. While often subtle they explain the differences between *Zella* and *Wolfe v. Sprouse.* *Zella* more accurately reflects the Virginia law on tenancies by the entirety and is more appropriately followed.[35]

## E. Presumption of Tenancy by the Entirety

There is one last issue suggested by Professor Minor. Minor states:

**34.** This was partially changed legislatively in 2001. Va.Code (1950) § 55–20.2(A) provides that "An intent that the part of the one dying should belong to the other shall be manifest from a designation of a husband and wife as 'tenants by the entireties' or 'tenants by the entirety.' " It is instructive to note that the General Assembly still did not make the intention to create a tenancy by the entirety the test, it merely inferred the requisite intent to retain survivorship into the use of the term "tenancy by the entirety," thereby placing the instrument within Va.Code (1950) § 55–21, the exception to Va.Code (1950) § 55–20 which would otherwise convert a tenancy by the entirety (without survivorship) into a tenancy in common.

**35.** *Wolfe v. Sprouse* was an exemption case, not a fraudulent or voluntary conveyance case. *Pitts v. United States,* 242 Va. 254, 260, 408 S.E.2d 901, 904 makes clear that Va. Code §§ 55–20 and 55–21 apply to the instru-

ment creating the estate. Consequently, if the promissory notes were the proceeds from the sale of tenants by the entirety property, the notes would be held as tenants by the entirety unless the estate was otherwise terminated. *Id.* at 20–261, 408 S.E.2d at 904–905. However, the "two promissory notes ... are proceeds of real estate sold by Mr. Sprouse." *Wolfe v. Sprouse,* 91 F.3d 133, 1996 WL 359573 at *1 (4th Cir.1996) (unpublished opinion). Thus, the focus was properly on the notes, not the title to the real property. The notes were the instruments creating the purported tenancy by the entirety estate. Whether the change from Mr. Sprouse's sole ownership to a tenancy by the entirety was a fraudulent or voluntary conveyance was not addressed. *See In re Massey,* 225 B.R. 887, 889–90 (Bankr.E.D.Va.1998). *See also* John Ritchie, 3d, *Tenancies by the Entirety in Real Property with Particular Reference to the Law of Virginia,* 28 Va.L.Rev. 608, 617 n. 27.

If land be thus given to a husband and wife, whether it is to be regarded as a tenancy *by entireties*, or a *joint* tenancy, or a tenancy *in common* merely, is a matter of the *intention* of the grantor or testator; but in the absence of a clear intent manifested to the contrary, it is *prima facie* to be regarded as a tenancy *by entireties*.

2 Minor or Real Property § 853 (Italics in original.) Other states take a similar approach. *See Stuckey v. Keefe's Executors; Blease v. Anderson; Heatter v. Lucas;* discussed above at 24–26. It is also implicit in *Wolfe v. Sprouse*. There is no basis in the common law for this approach to tenancies by the entirety estates. The common law was founded on the unity of the husband and wife, a unity that was an integral part of the common law, not an optional rule to be invoked at the pleasure of the parties involved. As long as the unity of husband and wife is respected, it is not possible for spouses to selectively decide which property will be held as tenants by the entirety and which will be held as either joint tenants or tenants in common. However, later statutory changes such as partition statutes, survivorship statutes and married women's property rights acts introduced non-uniform changes, in some cases abrogating the common-law principle of the unity of husband and wife as applied to tenants by the entirety estates. Annotation, *Married Women's Act as Abolishing Estates by Entireties,* 141 A.L.R. 179 (1942).

▮ In Virginia, however, neither the partition nor the survivorship statutes altered the common-law principle of the unity of the husband and wife. Nor did the Virginia Property Rights of Married Women Act modify the tenancy by the entirety estate. John Ritchie, 3d, *Tenancies by the Entirety in Real Property with Particular Reference to the Law of Virginia,* 28 Va.

L.Rev. 608, 611–616. There is no suggestion in any Virginia case that the absence of a recitation of marital status creates an ambiguity that must be resolved or that a presumption is created that may be rebutted with evidence to the contrary.

The General Assembly has never required the recitation of marital status or suggested that the absence of a recitation of marital status created a presumption of the existence or non-existence of a tenancy by the entirety. In 1849 when the General Assembly first made the survivorship statute applicable to tenancies by the entirety, it merely required that the property be "conveyed or devised to a husband and wife." Va.Code (1849) c. 116, § 18. In 2001 when the General Assembly enacted Va.Code (1950) § 55–20.2, it used similar language. It provided that "[a]n intent that the part of one dying should belong to the other shall be manifest form a designation of a husband and wife as 'tenants by the entireties' or tenants by the entirety." Va.Code (1950) § 55–20.2. It never amended the survivorship statute to require that marital status be manifest on the face of the deed as it has with the requirement of survivorship as it certainly could have done. While other states have created a presumption with regard to their real property estates, Virginia has not.

## III. CONCLUSION

The strict common-law principle that a conveyance to a husband and wife creates a tenancy by the entirety remains the law in Virginia. The tenancy by the entirety estate rests on this foundation and no recitation of marital status is necessary to create a tenancy by the entirety.

▮